Decided January 27, 1896.

## WILLIS *v.* LANCE.

[43 Pac. 487; 384.]

28  371
39  182
28  371
41  262
28  371
e43  34

1. CROSS-EXAMINATION.— Defendant in an action for injury from fire alleged to have been kindled by him cannot be cross-examined as to a custom to back-fire for the purpose of proving his negligence, where, on his direct examination, he has neither admitted that he set the fire nor testified to any custom.

2. INSTRUCTIONS TO JURY— VALUE OF EXPERT EVIDENCE.— Where witnesses who were present at a fire testified that the wind was from a certain direction, and an officer from the weather bureau, which was several miles distant, testifies that the automatic register, which was located in an elevated position, free from obstruction, showed the wind to have blown from another direction, it was not error for the court to state to the jury "that when a man comes before you, and says that the direction of the wind at a certain time was from such a quarter, so many miles away, and was blowing at the rate of so many miles per hour, irrespective of hills or forests, you will take into consideration your own experience, and the experience of other witnesses who have testified, whether that instrument is to be believed, under such circumstances and at such a distance, or whether your own experience and the testimony of the witnesses are worth anything. Consult your own experience, as well as the report made by the officer." This is only instructing the jury to apply to conflicting testimony the test of their own judgment and experience, which they certainly ought to do.

3. DISCRETION OF COURT— FILING COST BILL— CODE, § 557.— It is within the discretion of the court to extend the time for filing an amended verified statement of costs where the application to extend is made within the five days allowed to file the statement.

4. STATEMENT OF ITEMS IN COST BILL— CODE, § 557.— A verified statement under Hill's Code, § 557, showing the materiality and necessity of each item of costs objected to need not show the materiality of the testimony of witnesses whose fees are taxed, where it states that they necessarily attended court and were sworn and examined as witnesses at the trial, for their testimony must have have been material or it would not have been received.

5. COSTS— FINDINGS BY COURT— CODE, § 557.— A party having objected to certain items of a cost bill, the court, upon motion to retax costs, should make separate findings as to each item objected to: *Thomas v. Thomas*, 24 Or. 251, approved and followed.

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

This is an action by Willis Brothers against O. H. Lance to recover damages resulting from the alleged wilful and negligent conduct of the defendant. The facts are that on September fifth, eighteen hundred and ninety-two, the plaintiffs were the owners of a quantity of cord wood cut from and remaining on a tract of land that was bounded on the east by the defendant's land and that of one Mrs. Chase, the latter tract joining the defendant's premises on the north. On said date a fire swept across Mrs. Chase's land to the plaintiff's and burned a portion of their wood, and threatened the destruction of it all, necessitating the employment of men and teams° in removing it from the region of the fire. The plaintiffs allege, in substance, that the defendant wilfully and negligently kindled the fire on his premises and Mrs. Chase's land, from which it spread to their tract and destroyed four hundred and eight cords of wood, of the value of eight hundred and sixteen dollars; that by reason of the defendant's negligence they were compelled to and did pay out one hundred and ninety-eight dollars in the employment of men and teams to remove and protect their said cord wood, and pray judgment for one thousand and fourteen dollars. The answer having put in issue the allegations of the complaint, a trial was had, resulting in a judgment in favor of the defendant, from which the plaintiffs appeal, assigning as errors the rejection of testimony, and the giving of certain instructions to the jury.        AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Frederick L. Keenan.*

For respondent there were briefs and oral arguments by *Messrs. John F. Caples* and *Greenbury W. Allen.*

Opinion by MR. JUSTICE MOORE.

1.   The defendant, having been called as a witness
in his own behalf, testified, in substance, that between
twelve and one o'clock in the afternoon of the day in
question he discovered a fire that had been burning
in the timber approaching his premises near the
northeast corner, the same being the southeast corner
of Mrs. Chase's land; that the wind was then blowing
quite a gale from the northeast, and the fire was
driven thereby upon Mrs. Chase's land near the south-
east corner; that he raked away the briers and twigs
at his north line to keep the fence from burning.
Upon cross-examination an objection was interposed
to the following question: "Is it not customary, if one
wants to save his property, to back-fire?" and, the
objection being sustained, the plaintiff saved an excep-
tion.   It is contended that the question was competent
as tending to prove the defendant's negligence and
want of due care, and that the refusal to permit the
witness to answer it was a restriction of the right of
cross-examination.   No direct evidence that the de-
fendant kindled the fire was introduced at the trial,
and his testimony showed that he raked away the
briers and twigs from the fence only to protect it
from destruction. How, then, could the question be-
come material, except upon the assumption that the
defendant owed a duty to the plaintiffs of protecting
their property.   If he neglected to "back-fire" along
the line of his fence, in consequence of which it was
destroyed, the loss would fall upon him, and not upon
the plaintiffs.   Had he testified that he kindled a fire
to protect his property, there might have been just
reason for allowing him to prove the existence of
such an urgent necessity as would have warranted

and excused his act, but the right to kindle the fire
under such circumstances would not be founded in
any custom, but upon necessity.   If the defendant, ap-
prehending the destruction of his property, had "back-
fired," and, through his carelessness, the fire so kindled
by him had escaped and destroyed the plaintiffs' prop-
erty, proof that the fire was set in conformity with a
custom or usage long established would not excuse his
negligence: 16 Am. and Eng. Ency. of Law, 462.   Evi-
dence of a custom or usage is admissible to explain,
but not to contradict, the terms of a contract silent
as to details or ambiguous as to incidents and condi-
tions: *Holmes* v. *Whitaker,* 23 Or. 319 (31 Pac. 705); *Gov-
ernor* v. *Withers,* 5 Va. 24 (50 Am. Dec. 95).   The plain-
tiffs' action being founded in tort precludes the de-
fendant from proving the existence of any custom or
usage to excuse his alleged negligence, and, this being
so, by what right could the plaintiffs insist upon prov-
ing a custom for the purpose of establishing the de-
fendant's liability?   As we view the question, assuming
that the question could have been proven in this man-
ner and by one witness, the object sought by asking
it was to show that when one's fence is endangered
by fire it is customary to avert the threatened injury
by "back-firing," and, as the danger to the defendant's
property was imminent, an inference might be invoked
that he kindled the fire which wrought the plaintiffs'
injury.   If proof of such a custom were permissible,
the burden of establishing it was cast upon the plain-
tiffs; and the defendant, in his direct examination, not
having admitted that he kindled the fire, or testified
concerning any custom, what right of cross-examina-
tion was restricted by the court's refusal to permit
the witness to answer the question?   It is true the
right of cross-examination is a valuable one, tending

to explain the testimony given in chief and to establish truth, but it should be confined to matters stated in the direct examination or properly connected therewith: Hill's Code, § 837. The question not being germane to the issue, nor proper cross-examination, the court committed no error in refusing to permit the witness to answer it.

2. At the trial the plaintiffs sought to show that the defendant kindled the fire complained of, while the defendant undertook to prove that it had been raging in the timber for some time, and on the day in question was driven by force of the wind across Mrs. Chace's land to the plaintiffs' tract, destroying their wood and causing the injury. The plaintiffs' premises being situate west of Mrs. Chase's, the direction and force of the wind became important factors in determining the origin of the plaintiffs' loss. The testimony of the defendant and seven witnesses called in his behalf tended to show the facts he undertook to prove, and that the wind was blowing from the northeast. W. S. Blandford, being called as a witness, testified, in substance, that he was an officer in charge of the United States Weather Bureau at Portland, and had in his possession the records of that office, giving the direction and velocity of the wind for September, eighteen hundred and ninety-two, and, referring thereto, said that on Monday the fifth of said month, the wind was blowing from the north until three o'clock in the morning, at which hour it changed to the east, and continued easterly until eight o'clock in the forenoon, when it changed, veering to the southeast and south until two o'clock in the afternoon, and from the hour last named the wind was blowing from the south until midnight. Referring to the velocity of

the wind on that day, the witness said that from midnight until nine o'clock in the morning it was blowing from two to six miles per hour; that from the hour last named until eight o'clock in the evening it was blowing from nine to fourteen miles per hour, except between twelve o'clock noon and one o'clock in the afternoon it was blowing from the south fourteen miles per hour, and between three and four o'clock in the afternoon, seven miles per hour. The witness also said that the record was made by an instrument attached to a wind vane then located on the roof of the Kamm Building at First and Pine Streets, by means of which the direction of the wind was printed on a sheet of paper fastened to a revolving cylinder, known as an automatic register, that was kept in motion by clockwork. The following question was then asked the witness by plaintiffs' counsel: "The fact is, that machine could be relied on against the world, or a regiment of ordinary people?" to which he answered, "We would rely upon this, sir, against the city." The court then asked the following questions: "Suppose there was a deep canyon running east and west, and a fire should be built in it, and there was a strong current of air in the direction of the smoke and flame to the east, and your observation would say there was a north wind, would the experience and observation of those who actually saw it be of any consequence in comparison with your instrument?" Answer—"Our instrument would record the actual direction of the wind accurately." Question—"Where? All over this state?" Answer—"No, sir; we would say if it blew six miles an hour in this valley (Willamette), it would be the constant direction down the valley and up." Question—"I am speaking of the direction, not the velocity." Answer—"Yes, if it was

very light wind, the wind would be liable to change, I should say, if it was less than six miles an hour." Whereupon the court, after charging the jury upon the issues of the case, gave the following instruction: "There is one matter further that I will mention to you, and that is part of the testimony offered here is the record of the weather bureau. That record is not made by the hand of man; it is made automatically. It gives the direction and the velocity and the wind sought to be ascertained by means of machinery, and, connected with that machinery, these matters, the velocity and the direction of the wind, are recorded. But that instrument, you will observe, according to the testimony of the witness, was situated in an elevated position, clear from obstruction, and when a man comes before you, and says that the direction of the wind at a certain time was from such a quarter, so many miles away, and was blowing at the rate of so many miles per hour, irrespective of hills or mountains or forests, you will take into consideration your own experience, and the experience of other witnesses who have testified here, whether that instrument is to be believed under such circumstances and at such a distance, or whether your own experience and the testimony of the witnesses are worth anything. Consult your own experience, as well as the report made by the officer." An exception to this instruction having been saved, it is contended that the language there used was an adverse comment upon expert evidence; that the court usurped the functions of the jury; that undue prominence was given to a part of the testimony to the exclusion of other evidence, and that the record of the weather bureau was not within the experience of the jurors.

If it be assumed, as the plaintiffs contend, that the court charged the jury to disregard the testimony of the officer of the weather bureau, the instruction was erroneous; or, if it required the jury to determine from their experience the accuracy of the automatic register used to ascertain the direction and velocity of the wind, it was equally erroneous; for it must be presumed that such instrument and the record made by it were matters not within the general knowledge of mankind, and hence the jury was incompetent to pass upon the question.   The bill of exceptions does not show the distance from the weather bureau office to the scene of the fire, nor how many hills, mountains, or forests intervened, or that the fire was confined to a canyon; but, in the absence thereof, it must be presumed that evidence was introduced showing or tending to show the relative positions of the fire and the office of the weather bureau, together with the geography of the intervening space.   The court did not attempt to question the veracity of the record made by the automatic register, so far as it applied to the location in which the record was made.   There was no conflict of evidence in relation to the velocity of the wind between the hours of twelve and one o'clock on September fifth, eighteen hundred and ninety-two, the defendant saying it blew quite a gale, while the record showed that it was blowing at the rate of fourteen miles per hour.   There is a conflict, however, as to the direction of the wind at that hour, the defendant and his witness saying that at the fire it was blowing from the northeast, while the record shows that at the City of Portland, several miles distant, it was blowing from the south.   The testimony of the witnesses who saw the fire and observed the direction of the wind may have been true, and the contradictory show-

ing of the record made at a different place does not
necessarily prove it to be untrue. The question as to
the direction of the wind was for the jury to deter-
mine from all the evidence submitted. The jury must
be presumed to have been composed of intelligent
persons, and as such must have known that obstacles,
such as hills, mountains, and canyons, would neces-
sarily divert the course of the wind. They may have
observed that a great fire would in a slight degree
tend to affect its current, and while they, without the
aid of a vane, may not have been able to indicate the
exact point of the compass from which the wind blew,
they could ascertain its general direction. It does not
necessarily follow, because the wind was blowing at a
certain place from a given direction, that it was blow-
ing at all places from the same quarter. Stations of
the weather bureau have been established and are
maintained by the government at important points, to
observe climatic conditions, and gather and compile
useful information, which has become a great aid to
agriculture, commerce, and navigation; but the record
thus made is not regarded as verity except at the sta-
tion where taken, and becomes useful to great areas
of territory only when compared with observations
taken at other stations. By means of the telegraph
these comparisons are readily made, from which storm
centers are located, and their general direction and
the force that impels them noted, enabling the officers
of the weather bureau to predict with quite a degree
of certainty the "probabilities" of the weather,
thereby rendering great benefit to mankind in the
saving of lives and property. The court did not at-
tempt to question this record, when applied to the
location in which it was made, but submitted it to the
jury to say whether, from their experience, it should

outweigh the testimony of numerous witnesses who saw the fire and observed the direction of the wind. The experience to which the court referred did not allude to the operation of the automatic register or to the record made by it, but to the experience of the jurors as to wind currents, and particularly when affected by obstacles. This being so, the question is presented whether jurors could be governed by their experience in determining the weight of evidence. Had the fire been in the City of Portland, instead of several miles away, no one will pretend to say that the record of the weather bureau was conclusive evidence of the direction of the wind, when contradicted by the testimony of witnesses. The witnesses may have been laboring under a mistake, or falsely testified concerning the direction of the wind, yet, if the jury believed their statements to be true, such testimony would outweigh the report of an automatic register. The jury are the judges of the effect or value of evidence, except when it is declared by law to be conclusive, and they are not bound to find in conformity with the declaration of any number of witnesses which do not produce conviction in their minds, against a less number or against a presumption or other evidence satisfying their minds: Hill's Code, § 845. If a juror could not consult his experience he could never reach a conclusion in cases in which the evidence was conflicting. His experience is or should be the lamp of reason by which his judgment is controlled, and he may consult and be governed by it in all cases in which the evidence is conflicting, and not declared to be conclusive; and the court may properly instruct the jury that on examining the evidence they may bring to its consideration in determining the weight to be given to it such general practical knowl-

edge as they may have upon the subject: *Douglass* v. *Trask,* 77 Me. 35. We cannot think the instruction complained of violated any rule of law, and hence the judgment is affirmed.                    AFFIRMED.

## ON MOTION TO RETAX COSTS.

This is an appeal from the action of the trial court on a motion for the retaxation of costs in the foregoing case. The facts are that on December eighteenth, eighteen hundred and ninety-three, judgment having been rendered against the plaintiffs for costs and disbursements, defendant on the following day filed a cost bill, containing the names of his witnesses, the number of days each attended, the number of miles traveled, and the fees claimed by the officers of the court, amounting to three hundred and fifty-four dollars and seventy cents. On the twenty-eighth of said month the plaintiffs filed objections to each item contained in the cost bill, and, on January fourth, eighteen hundred and ninety-four, the court having extended the time to that date, the defendant filed an amended verified statement thereof. On being considered by the clerk, that officer allowed and taxed the costs and disbursements at three hundred and twenty-seven dollars and fifty-five cents. The plaintiffs appealed from such taxation to the court, which affirmed the action of the clerk, and retaxed the costs and disbursements at the same amount, from which judgment the plaintiffs appeal, and contend that the trial court erred in extending the time to file the amended verified statement; that such statement is insufficient to support the judgment based thereon; that because the clerk and stenographer did not file an itemized statement of their fees the court was powerless to award

any judgment thereon; and that the court failed to make findings upon the separate items of the cost bill objected to by plaintiffs.

3. The statute provides that when objections are made to the claim for costs and disbursements, the party seeking to recover the same may, within five days after said objections are filed, file with the clerk an amended verified statement, showing the materiality and necessity of each item so objected to: Hill's Code, § 557. The objections to the cost bill having been filed on December twenty-eighth, the defendant, on the fifth day thereafter, obtained an order extending the time for filing the amended verified statement to January fourth, on which day such statement was filed. The plaintiffs insist that the court had no authority to extend the time without a showing made for that purpose, and in support thereof cite the case of *Hislop* v. *Moldenhauer,* 24 Or. 106, (32 Pac. 1026,) in which it was held that where no objections to the cost bill had been filed within the two days allowed therefor, it was error to permit such objections to be subsequently made without a showing that the failure to so object within the prescribed time was through the party's mistake, inadvertence, surprise, or excusable neglect. In the case cited, no objections to the cost bill having been made within the time prescribed by law, the judgment had become final, and, the party being in apparent default, the court was powerless to set aside the judgment except upon such a showing. In the case under consideration the defendant was not in default when the order was made extending the time, and, this being so, it was in the discretion of the trial court to enlarge the time: Hill's Code, § 102.

4. The first item of the amended verified statement is as follows: "That the witness J. W. Purcell was necessarily in attendance upon said court on the first trial of said cause as a witness only, and for no other purpose, for two days, and necessarily traveled to and from his home in reaching said court five miles each way, making, as set forth in said original bill, the sum of five dollars." Each item is substantially set forth in the preceding form, and the statement closes with the following: "That each of said witnesses was in attendance upon said court at my request, either by special promise to so attend, or by regular subpœna served upon them respectively, and the testimony of each one of said witnesses was material, and that each was sworn and testified in said action." The plaintiffs insist that this statement fails to show the materiality and necessity of each item thereof. In *Wilson* v. *Salem*, 3 Or. 482, the court, in defining the items of a cost bill, says: "The attendance of a witness is an item, the mileage of that witness is another, the necessity for his attendance a third, and to each the party charged may or may not object." When a witness has attended court by agreement with the prevailing party, or in obedience to the service of a subpœna at his request, but has not been examined or sworn, a just reason exists for requiring a showing of materiality of the testimony expected from the witness in order to recover his fees (*Pugh* v. *Good*, 19 Or. 85, 23 Pac. 827); but when a witness has been sworn and examined, the court must necessarily pass upon his competency and the materiality of his testimony, and, this being so, we fail to see the necessity of an averment even that his testimony was material to the issue. The same court that tried the cause must, upon appeal from the clerk's taxation, retax the costs and disburse-

ments, but it cannot be expected that the court will retry the materiality of the testimony of a witness. A judgment of nonsuit may be given without calling a witness for the defendant, but in such case the prevailing party ought to recover his witness fees upon showing the materiality of their testimony, for the necessity of his witnesses being present is apparent, since he could not know that his motion would be granted until the court passed upon it, or that the plaintiff might not, by leave of the court, cure by amendment the infirmity in his pleading disclosed by the motion. So, too, the prevailing party may, out of an abundance of caution, procure the attendance of witnesses whom he does not call, in which case the materiality and necessity of their testimony become important questions for the consideration of the court upon a motion to retax. When a party, upon objection to his cost bill, states that a given person necessarily attended the court a given number of days as a witness only; that he necessarily traveled a certain number of miles in going from and returning to a given place, and that he was sworn and examined as a witness at the trial, we think he has stated all the law requires, for the necessity having been alleged the materiality is implied from the fact that his testimony was received. Any other rule would require a statement of the substance of the testimony given by the witness, which is not necessary except in case he has not been called.

5. The record does not show that the stenographer or clerk itemized the statement of their fees. The findings of the clerk show that the official reporter performed two and one half days' services at the first trial, and three days at the second, for which he

was allowed fifty-five dollars. The original claim for clerk's fees was thirty-one dollars and five cents, which the clerk taxed at twenty-three dollars and five cents, without enumerating in such taxation the items that constituted the claim. The clerk having given the items of the reporter's fees and reduced his own, it may be inferred therefrom that such statements were filed by these officers. The statute provides that no officer's fees shall be recovered as disbursements unless such officer shall file in said cause an itemized statement of all fees claimed by him therein: Code, § 557. The manifest object of this provision is to bring into the record such facts as will enable the clerk to tax, or the courts, from their inspection, to retax, the fees of its officers. Every party has a right to know the items of disbursements proposed to be taxed against him, and, upon objecting to the cost bill, the fees of officers must be itemized if the prevailing party would seek to recover them. The clerk, in taxing the costs and disbursements, found the number of days' attendance, the number of miles traveled, and the amount due each witness, which, with the fees of the officers, amounted to three hundred and twenty-seven dollars and fifty-five cents. The court, upon the motion to retax, failed to make findings upon each lien objected to, but affirming the findings of the clerk gave judgment for the amount so found. The plaintiffs having objected to each item of the cost bill, the defendant tendered an issue thereon by filing an amended verified statement, thus making each item a separate cause of action, upon which the plaintiffs were entitled to a separate finding of fact and law by the court: Code, § 557; *Thomas* v. *Thomas,* 24 Or. 251 (33 Pac. 565). No findings having been made by the court upon the several items of the amended cost

bill, the judgment is reversed, and the cause remanded with direction to the court below to make such findings and retax the costs.

AFFIRMED — COSTS RETAXED.

Argued December 3, 1895; decided January 27, 1896; rehearing denied.