'Sullivan,
Nov. 6, 1918.

## WINNIE P. CROSSETT *v.* REGINALD D. BRACKETT.

Either party may demand performance of a contract to marry, and a refusal to comply with a reasonable demand is a breach; but until such demand the contract remains in force unless discharged by mutual abandonment, or disavowal by one party.

Neither the right to demand performance of such a contract nor the demand thereof creates a breach; but the right to sue arises upon refusal to comply with a demand or upon a disavowal by either party.

Though the illicit relations existing between the parties to a contract to marry furnish the motive for delaying its performance, the contract is not thereby abrogated or rendered illegal.

ASSUMPSIT, for breach of promise of marriage. Trial by jury and verdict for the plaintiff.

The plaintiff's evidence tended to prove a contract to marry, made in 1898, and that shortly thereafter the parties began to live as husband and wife and continued so to live until 1917. The subject of their marriage was frequently discussed, and as to it the plaintiff testified in part as follows:

"Q. Did you and he take up relations of man and wife together as soon as you began keeping house? A. Yes, sir.

Q. And those have continued for how long? A. Ever since.

Q. Until when? A. Until last January.

Q. How frequently was the question of marriage brought up or discussed between you and he? A. I can't tell you; it was a good many times.

Q. Give us an idea how frequently, whether it was several times a year or not. A. Sometimes three or four times a year.

Q. What was the result of your conversation with Mr. Brackett in relation to it? A. I was always put by until another time.

Q. What would he say to you? A. A good many times he asked me if I couldn't trust him to do what was right by me.

Q. What did you say to that? A. I told him yes.

Q. You would consent to a further postponement of it? A. Yes.

Q. When was the first time that he ever indicated that he might not marry you? A. Two years ago.

Q. What was his language at that time? A. He said he'd made up his mind he would never marry.

Q. Did you continue to live, with him after that? A. Yes, sir.

Q. What did he say afterwards that led you to think he might change his mind? A. Nothing, only wanted to know if I couldn't trust him."

About 1907 defendant received some life insurance. Plaintiff testified: "He said when he got his life insurance we would be married. When he got it he wanted to use it to buy a lumber lot, and he said, 'Let's wait a little longer.'" To which she replied: "I told him I didn't know why we couldn't be married just as well now as later, but he said he wanted to use this money, so I thought it didn't make any special difference after we had lived there as long as we had."

"Q. You asked him to marry you? A. I did.

Q. He wanted it put off a year or two, and you consented to it? A. Yes.

Q. Then you lived in adultery with him after that? A. Yes, sir.

Q. By agreement — understanding? A. He said he would marry me at some future time."

The last talk about marriage was in April or May, 1917. The plaintiff testified about it as follows:

"Q. What was the occasion of that? A. I was trying to have him do something.

Q. What do you mean? About what? A. Why, I thought we might be married, or we would quit.

Q. Did you tell him that? A. Yes, sir.

Q. What did he say? Did he refuse to marry you at that time? A. Yes, sir."

The defendant's motions for a nonsuit and directed verdict were denied, subject to exception.

The defendant denied that he ever promised to marry the plaintiff. One piece of evidence introduced by her was a ring which she claimed the defendant gave her as an engagement ring. It was not engraved on the inside, and in his closing argument counsel for the defendant commented on that fact. In the closing argument for the plaintiff counsel said: "I hope you know whether it is customary to mark little diamond rings. I don't know where Brother Martin has lived, but I never saw one of those rings marked, an engagement ring. Maybe you know about that." The defendant excepted. There were also exceptions to the charge.

Transferred from the November term, 1917, of the superior court by *Kivel*, C. J.

*Joseph Madden* and *Jesse M. Barton* (*Mr. Madden* orally), for the plaintiff.

*Martin & Howe* and *Frank O. Chellis* (*Mr. Howe* orally), for the defendant.

PEASLEE, J.   In support of the motion for a nonsuit, the defendant claims that there is no evidence of a legal contract to marry existing between the parties at a later date than 1898.   He admits that there is evidence of an original legal promise to marry, but claims that it conclusively appears that this promise was shortly thereafter abandoned and a promise based upon an illegal consideration substituted therefor.   But if the evidence is sufficient to support such a finding it is by no means the only conclusion which might reasonably be reached.   It could fairly be found that the subsequent negotiations all had to do with the fulfilment of the original promise, that there was never any abandonment of it and that both parties recognized its binding obligation and agreed that the time for its performance should be postponed.   The fact that their illicit relations furnished the motive for delaying performance of the legal agreement, did not abrogate the original contract or render it illegal.

The defendant's contentions are largely based upon a misconception of the nature of the contract to marry, and of what is necessary to show a breach thereof.   After the promise has been made, it is the right of either party to demand performance, and if the demand be reasonable in point of time, etc., a refusal to comply therewith is a breach of the contract, and a cause of action arises.   But, until such demand is made and insisted upon, the contract continues in force, unless abandoned by agreement of the parties, or disavowed by one of them.   "Before a right of action accrues for the breach of a marriage contract, it must be averred and proved that the contract has been repudiated and such repudiation must be shown by the acts, words, conduct or deed of the party who so repudiates it, and to be without sufficient reason or cause.   There must be a refusal to marry, or a repudiation in some way of the contract."   *Walters* v. *Stockberger,* 20 Ind. App. 277.

The reasons which induce one of the parties to refrain from demanding present performance of the agreement are immaterial.   If the question were whether the agreement to postpone for a fixed time were itself a binding contract, so that until the time had elapsed neither could demand performance, the question of the legality of

the consideration for it would be presented. But no such question arises upon the evidence in this case. The plaintiff does not rely upon such promise to make out her cause of action. The evidence of their relations and negotiations is material to the plaintiff's case merely to show that the original promise to marry had not been abandoned.

The original promise and the ultimate refusal to perform being shown, it was incumbent upon the defendant to excuse or justify the refusal. The mere fact that there had been no disavowal or abandonment at an earlier date was sufficient for the plaintiff's purposes, and proving that failure to disavow was induced by illegal acts in which both participated would not show that there was a disavowal.

Since the cause of action arose at the time of breach and not when the original promise was made, the action was seasonably brought. The plaintiff's evidence was that there was no breach until shortly before suit was begun. It is of no consequence that she might have made and insisted upon a demand for performance at a much earlier date. It is not the right to demand performance, nor even the demand which creates the right to sue, but the refusal to comply with the demand, or the disavowal of the contract when no demand is made. If the defendant had desired to terminate the contract at an earlier date he could have done so at any time. As he did not do so, he cannot claim the protection of the statute of limitations. He is sued for breaking the contract, not for making it. The nonsuit was properly denied.

The statement of plaintiff's counsel in his closing argument that he "never saw one of those rings marked" was testimony upon a point material to the case. Because of it the verdict must be set aside.

The exceptions to the charge merely present questions whether certain admitted propositions were fairly covered by the instructions given. As there must be a new trial there is no occasion to examine the details of the charge.

*Verdict set aside.*

YOUNG, J., was absent: the others concurred.