GREISSING *v.* OAKLAND MOTOR CO.

1. SALES—ACCEPTANCE—RIGHT OF ACTION—FRAUD—DAMAGES.
    A purchaser's acceptance of an automobile by her attorney, to whom it was represented that the car was new, did not preclude her from recovering damages because it was a second-hand car and not new as represented.

2. TRIAL—ARGUMENT OF COUNSEL.
    In an action for damages for delivering to plaintiff a second-hand automobile in place of a new one purchased by her, it was reversible error for plaintiff's counsel to read to the jury, in his closing argument, a newspaper story undertaking to explain how a worthless second-hand car could not only be made to look like new, but could be made temporarily to run like a new car.

Error to Wayne; Hosmer, J. Submitted October 23, 1918. (Docket No. 15.) Decided December 27, 1918.

Assumpsit by Adah V. Greissing against the Oakland Motor Company for breach of a contract for the exchange of automobiles. Judgment for plaintiff. Defendant brings error. Reversed.

*Stevenson, Carpenter, Butzel & Backus* (*William Strite McDowell* and *Rockwell T. Gust,* of counsel), for appellant.

*Millis, Griffin, Seely & Streeter,* for appellee.

MOORE, J. The plaintiff in this case claims that on or about May 19, 1914, she entered into an agreement through the defendant's agent to purchase a car from the defendant; that the purchase price was fixed at $2,450 and that she was to pay for the car by turning over to the defendant her Oldsmobile Limited at

a valuation of $1,450, and the difference between these was to be paid in cash; that the contract was executed May 19, 1914; that with the car she was to get new cushion covers; that the car was to be a model 6-60, which was represented to her at the time by the defendant's agent to be the latest 1914 Oakland Big Six. The plaintiff claimed she did not receive the car she ordered; that the car she received was not a new car and that it was not the latest 1914 Oakland Big Six; that she entered into negotiations both personally and through her attorney to have this model turned back to the defendant and to obtain what she claimed she contracted for; that as a result of these negotiations she received from the defendant a car known as a model 6-61; that she agreed to accept a car known as a model 6-61, in lieu of the previous model 6-60, which had been delivered to her, provided she was given a new car, and that immediately after the model 6-61 was delivered to the plaintiff she discovered the car was not only defective in many particulars but was a second-hand car, and not a new car; and that it was not the car which the defendant company promised to give her in exchange for model 6-60. She brought this suit against the defendant to recover damages for breach of contract by reason of her claim that the car model 6-61 was a defective second-hand car. The case was tried by a jury which returned a verdict in favor of the plaintiff in the sum of $2,783. A motion was made for a new trial. The trial judge required the plaintiff to remit $625.51 of the verdict and unless this was done ordered that a new trial be granted. Plaintiff remitted that amount. The defendant has brought the case here by writ of error.

Many of the assignments of error relate to the rulings of the court in the admission or rejection of testimony. We have examined these assignments and

content ourselves with saying that none of them require a reversal of the case. Many assignments of error relate to the charge of the court. The defendant preferred no written requests. The trial judge apparently attempted in his charge to the jury to cover every phase of the case. After giving a charge that covers more than seven pages of the printed record, he turned to counsel and said:

"Now, if there is anything I have not covered up to the present time I should be pleased as far as that is concerned to hear from counsel.

"*Mr. Gust:* I think on the question of damages as I told the jury, and I think your honor will agree with me, that they must deduct whatever those repairs increased the market value of the car.

"*The Court:* There is no doubt about that. Of course, gentlemen of the jury, you have the testimony that a second-hand car in the market was not worth more than $500. I am not prepared to say, gentlemen of the jury, that you are compelled to award exactly that sum, as you have heard the testimony that she expended $700 and odd dollars upon the car, and it was the opinion of that particular witness that that would not increase the value of the car more than $150. I cannot say, gentlemen of the jury, that you are absolutely bound by that testimony. She has had the car two years, I think, and run it from that time to this and where it is purely a matter of opinion in that regard I think you may find, taking all things into consideration, what value she got out of her car.

"*Mr. Griffin:* And also that we are entitled to 5% interest.

"*The Court:* She is entitled to 5% interest.

"Gentlemen, you may follow the officer.

"*Mr. Gust:* I would be entitled to an instruction as to Mrs. Greissing's acceptance—as to her knowledge of the condition of the car; I don't know whether your honor inadvertently overlooked that.

"*The Court:* You did not hand in any request.

"*Mr. Gust:* No, but I think we are entitled to an instruction on that—the acceptance by Mrs. Greissing and her knowledge of the condition of the car.

"*The Court:* With reference to that, I think not. I think not, because if they find with reference to that she was entitled to a new car, then I think that the section of the statute applies with reference to it, that she is not obliged to return the thing but may bring a suit upon it.

"Gentlemen, you may follow the officer.

"*Mr. Gust:* Note an exception to the court's refusal to charge as requested in the verbal request of counsel."

When the trial judge thus addresses counsel, if they have any suggestions to make it becomes their duty to speak. Evidently counsel so thought for they at once made two suggestions to the court. As to the first the trial judge agreed with counsel and so instructed the jury. As to the second of these suggestions the trial judge declined to instruct the jury as requested orally by counsel. Was this error? The testimony offered on the part of the plaintiff was to the effect that she received the car through her attorney upon the assurance to him by defendant's agent that it was a new car, and that this assurance was not true, that her acceptance of the car under these circumstances did not preclude her from recovering damages because the car was not as represented. We think the judge did not err in declining to charge the jury as requested.

Other assignments of error relate to the conduct of counsel. One of them was allowed, against the objection of counsel, to read in the course of his argument from a newspaper as follows:

" 'Sense and Nonsense'—where two men were talking about buying second-hand cars—one man said to the other—'Don't buy a second-hand car unless they let you try it at least a month.' The other fellow said: 'Why?' 'Well,' he says, 'I will tell you. I wanted to buy a second-hand car the other day and I went down to a shop and I saw a beautiful limousine. They took it out and ran it and demonstrated it and we went

one hundred miles or more and a beautiful car it was. It ran perfectly in every way. Then I paid out my good money, bought the car, took it home and wanted to go on a trip of 200 or 300 miles within a day or two and then I had my experience, so that to give it exact I will read just what the experience was.'

"*Mr. Gust:* I object to this.

" 'Along about three o'clock the next morning I called up the shop, got my car and started for our ride for a city some 300 miles distant. Everything was rosy. The car had every virtue, speed, power, flexibility. I congratulated myself on my good investment. Along about three o'clock, however, a slight knocking began to be heard. I stopped and raised the hood but could not locate the trouble. I started again but the noise began to increase, etc. (reading), and the power seemed to decrease, seemed to be sluggish on the hills, by five o'clock the noise that emanated from that engine was enough to wake the dead and she was getting feebler every minute. Finally I pulled up in front of a garage and secured an attendant to diagnose the trouble. He poked about for about half an hour and finally said: "There is just one phrase to describe the trouble here. The car is fatally affected with senile debility. She has been a good boat in her day but she is just naturally worn out. She must have covered an immense mileage. Every part in the engine is badly worn. There is utter lack of coordination. It will cost you $400 or $500 to put her in condition to run. The man who sold her to you simply saturated her in oil. That is thick as molasses. There is two inches of stuff in the bottom of the crank case that tightened her up for one last effort; but at the same time it has so blocked her up that I doubt if she will run over a few miles more." '

"*Mr. Gust:* Does that say anything about driving it two years afterwards?

"*Mr. Griffin:* Yes, it says something about spending $700 trying to run it. 'I spent $700 on that car,' continued the speaker 'but she never would go satisfactorily. Finally I sold her for a song and bought a new one.' "

And counsel said:

"So I say, gentlemen of the jury, Mr. Lee's and

Mr. Ennis' description of the beautiful way that car ran when they brought it back the second time after they had fixed it reminds me of this story; so you cannot always tell when a man is on the stand and says that a car runs beautifully at a particular time and may have overhauled, unless you know what they have done to it; unless you know the actual condition of the mechanism of the car; unless you know all about the car, you cannot tell whether it is a good car or not."

If counsel had attempted to put the article in evidence it would clearly have been inadmissible.

The case was a hotly contested one between a corporation and a woman. The article undertook to explain how a worthless second-hand car could not only be made to look new but could be made temporarily to run like a new car. We think the conduct of counsel was reversible error. See *Glassbrook* v. *Lansing Wheelbarrow Co.*, 177 Mich. 29; *Morrison* v. *Carpenter*, 179 Mich. 207; *Wells* v. *Railroad Co.*, 184 Mich. 1; *Mortensen* v. *Bradshaw*, 188 Mich. 436.

The judgment is reversed and a new trial ordered, with costs to appellant.

BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred. OSTRANDER, C. J., did not sit.