Argued January 15; reargued March 20; affirmed April 14;
rehearing denied May 12, 1931

# KUEHL *v.* HAMILTON

(297 P. 1043)

*Marvin K. Holland,* of Portland, for appellant.
*B. A. Green,* of Portland, for respondent.

ROSSMAN, J. The defendant argues that error was committed when the circuit court overruled his motions for a nonsuit and for a directed verdict. His contentions are predicated upon the fact that plaintiff's vehicle, a half-ton truck, was not equipped with a rear view mirror as required by section 55-907, Oregon Code 1930. The conclusion that the absence of this item of required equipment constituted negligence per se requires no citation of authorities in this state. But

before the defense of contributory negligence was complete it was necessary for the defendant to prove not only that the plaintiff was guilty of negligence but also that his negligent act was the proximate cause or a concurring cause of the collision. The plaintiff testified that before he turned to his left for the purpose of passing the car ahead he looked to his rear through a peephole three inches in diameter, cut in a cloth which hung to his rear over the cab of the truck as a protection against the weather, and saw a car, but, believing that he could safely perform his contemplated act, proceeded. He also testified that he heard the horn of defendant's car to the rear and thus was additionally apprised of its presence upon the highway. Had he possessed a rear view mirror, and had he peered into it before turning to his left the information it would have imparted would not have advised him of a new fact, but would only have confirmed information he already possessed, provided, of course, that his above mentioned testimony was true. Under the above circumstances the court could not say that because the defendant had proved the plaintiff guilty of negligence he had also shown that the negligent act was the proximate cause, or a concurring cause, of the collision. The latter constituted an issue for the jury. The observations made in *Martin v. Oregon Stages,* 129 Or. 435 (277 P. 291), concerning the absence of the required white light upon the rear of the disabled truck, are applicable to our present situation. We conclude that the circuit court committed no error when it overruled the motions for a nonsuit and for a directed verdict.

■ The only other assignment of error which requires notice is based upon a statement made by plaintiff's attorney in the course of his argument to the jury.

The bill of exceptions indicates that in the course of Mr. Green's comment he said: "I want to relate to you an incident that happened to me yesterday that shows of what little use a mirror is. We were coming across the Burnside bridge"—at this point defendant's objection "that the argument be limited to the evidence" was disposed of with the ruling: "Proceed with the argument; upon Mr. Green's assurance, there is nothing here but what can be inferred." He proceeded: "We were going a little too fast and I thought I was watching the mirror, and when I got down the Burnside approach to 2nd street I heard the siren, and a police officer tagged me. In other words, the point I am making is, it doesn't make any difference in this case whether he had one mirror or a hundred mirrors. It didn't do any good with me; it wouldn't have done any good for Mr. Kuehl." At that point defendant's counsel moved: "I would like the evidence related by counsel stricken and the jury instructed to disregard it." The court promptly ruled: "It is not evidence at all. * * * Well, it is not evidence. Therefore, they should not consider it as such, statements of counsel. That is what you refer to, is it not, Mr. Holland?" Mr. Holland: "Surely. The argument is supposed to be upon the evidence and nothing else." Mr. Green drew the incident to a close by saying: "Or the inferences which we can draw from those conditions that were surrounding the situation as they were at that time, and we can relate it to machines or to mirrors, or to * * *." Although the transcript of the proceedings mentions no exception, yet since the bill of exceptions recites that one was allowed we are bound to assume that the defendant disapproved of the rulings made by the court.

■ Control over the argument of counsel is intrusted largely to the discretion of the trial judge. In *Huber v. Miller*, 41 Or. 103 (68 P. 400), Mr. Justice WOLVERTON said:

"It is usually, however, within the discretion of the trial judge to determine whether counsel transcend the limits of professional duty and propriety in this particular, and the exercise of such discretion is not the subject of review, except where they are permitted to travel out of the record, or to persist in disregarding the admonitions of the trial judge, or to indulge in remarks of a material character so grossly unwarranted and improper as to be clearly injurious to the rights of the party assailed."

■■ It is unnecessary to add further citations to the numerous ones assembled by Judge WOLVERTON in support of his above statement. Obviously the judge who presides over the trial, and who becomes familiar with its atmosphere, is best able to determine whether an excursion into a forbidden field is prejudicial, the extent of the injury, if any, and what remedies must be applied to undo the harm. In the present instance plaintiff's counsel made use of an experience which befalls many motorists in an effort to illustrate his contention that the rear view mirror does not always apprise the motorist of the presence of vehicles to his rear. Since the defendant claimed that the absence of such a mirror upon the plaintiff's car was the proximate cause of plaintiff's injury the merit of such equipment was a proper subject for discussion. Any fact of which the court can take judicial notice, although evidence of it has not been formally introduced, constitutes a proper subject for comment by counsel, provided the argument is relevant to some issue in the case: *Wilson v. Van Leer*, 127 Pa. 371 (17 Atl. 1097, 14 Am. St. Rep. 854). The reports of our court contain many expressions to the effect that a juror is not re-

quired to leave behind the experiences of life, which have guided him in his daily affairs, when he enters the jury box, but that upon the contrary his usefulness is enhanced if he has had broad experiences with affairs and with people, and makes good use of them as a juror: *Rostad v. Portland Ry. etc. Co.,* 101 Or. 569 (201 P. 184); *Willis v. Lance,* 28 Or. 371 (43 P. 384, 487); Wigmore on Evidence (2d Ed.) 2570; 2 R. C. L., 416. In *Rostad v. Portland Ry. Co.,* supra, Mr. Justice BURNETT said:

"But any juror must consider the testimony in the light of that knowledge and experience which is common to all men. For instance, it is a matter of common knowledge that a bullet piercing the brain of a human being will in all likelihood prove fatal. It is common knowledge also that * * * * *"

Continuing, Judge BURNETT employed the following portion of an Indiana decision, *Jenney Electric Co. v. Branham,* 145 Ind. 314 (41 N. E. 448, 33 L. R. A. 395):

"Jurors should be, and as a rule are, selected because of their extensive experience among men * * *. This education, be it much or little, is a part of the juror and should not, if possible, be laid aside in passing upon the inducements which may surround a witness to speak falsely."

Next he quoted from a Wisconsin case, *Solberg v. Robbins Lumber Co.,* 147 Wis. 259 (133 N. W. 28, 37 L. R. A. (N. S.) 790):

"Jurors are not restricted to a consideration of facts directly proved, nor are they expected to lay aside matters of common knowledge, or their own observation and experience of the affairs of life, but on the contrary, may give effect to such inferences as common knowledge or their personal observation and experience may reasonably draw from the facts directly proved."

In *Willis v. Lance,* supra, this court said: "His experience is or should be the lamp of reason by which

his judgment is controlled, and he may consult and be governed by it in all cases in which the evidence is conflicting and not declared to be conclusive.'' In that case the court held that the jurors could use their general, practical knowledge in deciding whether to believe numerous eye-witnesses as to the condition of the weather, or a meteorological wind-recording device. In the instant case the jury was called upon to determine whether the absence of a rear view mirror was the cause of the collision. There is nothing novel about such an article. It is precisely similar to the household article with which every one is thoroughly familiar. It is a well-known fact that although practically all automobiles possess such equipment numerous motorists are being daily arrested for violation of our traffic regulations after motorcycle officers have pursued them for considerable distances. The daily newspapers, the pulpit, the stage, the radio, etc., are constantly commenting upon the innumerable arrests which are being made by motorcycle officers. A juror unfamiliar with the above fact would certainly be an oddity. Hence, since the subject-matter of Mr. Green's argument was one of common knowledge he was entitled to make use of it in some form or other to illustrate his contention that the rear view mirror is not infallible. We quote from *Tucker v. Henniker,* 41 N. H. 317: ''His illustrations may be as various as the resources of his genius; his argumentation as full and profound as learning can make it; and he may, if he will, give play to his wit, or wings to his imagination.'' And in *Berry v. State,* 10 Ga. 511, Judge Lumpkin indicated the broad range or resources which counsel may employ to make their argument serve a useful purpose:

''Does not history, ancient and modern—nature, art, science and philosophy—the moral, political, finan-

cial, commercial and legal—all open to counsel, their rich and inexhaustible treasures, for illustration? Here, under the fullest inspiration of excited genius, they may give vent to their glowing conceptions, in thoughts that breathe and words that burn. Nay more, giving reins to their imagination, they may permit the spirit of their heated enthusiasm to swing and sweep beyond the flaming bounds of space and time—extra flammantia maenia mundi.''

But it is said that Mr. Green employed an experience personal to himself, and that in effect his comment was testimony. Very likely this observation possesses some truth; but the effectiveness of his statement did not depend upon the fact that he had had a personal experience with a rear view mirror, but upon the fact that in this manner he recalled to the jurors' minds the common knowledge above mentioned. The court promptly ruled: ''It is not evidence at all   *   *   *   Well it is not evidence. Therefore they should not consider it as such.'' This ruling was quickly reinforced by Mr. Green, who disavowed any intention to testify, and who declared that his purpose was to assist the jury to ''draw from those conditions that were surrounding the situation as they were at that time'' the proper inferences. Possibly, if mirrors were intricate objects which jurors could not readily understand, Mr. Green's statement of his mishap could be deemed injurious to the defendant. But what is more commonplace than a mirror? Are we to assume that jurors are so ignorant of the everyday experiences of life, and so easily deceived, that verdict must be set aside because the prevailing attorney in a few words related an experience which he had with a mirror? Without doubt the jurors during their deliberations mentioned many little experiences which they had had with this common household utility. If an affidavit could be obtained to

that effect, would we say that the verdict must be set aside? We believe that a conclusion is unwarranted that this case demands a reversal. The view, which we believe should be taken is well illustrated by the case of *Dennis v. State,* 139 Ala. 109 (35 So. 651), wherein a member of the negro race was charged before a Southern court with "shooting craps." The prosecuting attorney in his argument spoke thus:

"You gentlemen know the evils attendant upon these crap games,—a crowd of negroes with a bottle of whiskey in one pocket and a pistol in the other, get together to gamble, and you know what crimes grow out of these meetings."

Although there was no evidence that the defendant possessed a bottle of whiskey and a pistol yet the court held the argument nonprejudicial because

"In this instance the solicitor did not state as a fact in the case, that there was a bottle of whiskey or a pistol in the pocket of any one that played, but he was merely using what he said as to this matter, as an illustration of the evils that may grow out of gambling, and urging this as an argument in favor of suppressing the habit. The court committed no error in overruling the motion to exclude the language excepted to."

■■ A reversal is warranted only when the appellate court is satisfied that the trial court has abused the discretion vested in it for the proper supervision of the argument: 2 R. C. L., p. 434, and 38 Cyc. 1502. A disinclination by appellate courts to interfere with the exercise of this discretion, and a reluctance to reverse where the trial court made rulings in an effort to keep the argument within proper bounds is shown by the authorities: Note, L. R. A. 1918D, 49. Since we are not satisfied that through any alleged failure of the trial court to supervise the argument the defendant's cause was materially prejudiced we do not believe that a reversal is warranted.

Before concluding, it may be well to add that nothing herein said should be construed as detracting from the power vested in the trial judge to properly supervise the arguments of counsel. Every litigant is entitled to a fair trial, and this result cannot be achieved if counsel is permitted to make statements to the jury of facts not testified to by any witness nor admissible in evidence. Trial judges do not need to be prompted by an objection before exercising their power. An extensive review of the cases in L. R. A. 1918D, 25, is accompanied by the comment: "There does not seem to be a single case, civil or criminal, in which complaint was made to a reviewing court that the trial judge interfered when counsel for the defeated litigant was addressing the jury, to prevent his stating facts not in evidence or inferences from unproven facts, where the trial court was not commended for doing his plain duty in the circumstances." In the present case the trial court should have prevented Mr. Green's relation of his personal experience; but its failure to do so does not constitute reversible error.

Since the contentions of appellant reveal no reversible error the judgment of the circuit court is affirmed.

BEAN, C. J., BROWN, BELT and CAMPBELL, JJ., concur.

KELLY and RAND, JJ., dissent.

---

KELLY, J. (Dissenting.) This is an action to recover damages alleged to have been sustained by plaintiff while operating a half-ton Ford auto truck upon the highway near Multnomah station. Plaintiff was traveling in an easterly direction. A Velie automobile was upon the highway, ahead of plaintiff,

traveling in the same direction. Defendant was behind plaintiff traveling in the same direction and driving a Ford tudor sedan. Plaintiff tried to pass the Velie car and defendant tried first to pass plaintiff and then both plaintiff and the Velie. Defendant's car collided first with a mail box and its supporting post near the northerly side of the highway and then with plaintiff's truck upsetting the truck. Plaintiff's truck was not equipped with a rear view mirror. Its cab was covered with a canvas top; on each side there was a glass window, and a curtain had been nailed up back of the driver. Plaintiff's testimony disclosed that in the rear and to the driver's right there was an aperture in the curtain through which the driver of the truck, by turning his head, could look back and out upon the objects behind the truck.

The plaintiff charged defendant with having operated his car at an excessive speed having failed to give a signal or warning before attemtping to pass plaintiff, and with having attempted to pass plaintiff's car when plaintiff was in the act of passing a car in advance of both plaintiff and defendant.

The defendant charged plaintiff with negligence. Paragraph 2 of defendant's further and separate answer is as follows:

"The direct and proximate cause of said accident and collision was and is the negligence of plaintiff in the following particulars, to wit:

"(a) In failing to keep proper lookout for traffic and particularly for the automobile of defendant immediately prior to and at the time of said accident, and in operating said truck without a rear-view mirror.

"(b) In operating and driving said Ford truck with a cab or cover over the seat thereof, so constructed as to render it inconvenient or impossible for the driver thereof to keep a lookout and see and give a signal with his hand or arm.

"(c) In carelessly and negligently failing to give any sign, signal or with his hand or arm, or with his horn, of his intention to swerve suddenly to his left and to the left-hand side of the highway and attempt to pass said Velie automobile.

"(d) In carelessly and negligently attempting to turn to his left and pass said Velie automobile while the automobile of defendant was in the act of passing plaintiff's truck.

"(e) In carelessly and negligently failing to keep said truck under proper or any control and for increasing the speed of his truck while being overtaken and passed.

"(f) In carelessly and negligently driving said truck suddenly and without warning to the left toward the passing automobile of defendant, and crowding defendant off the highway, and in carelessly and negligently failing to observe the situation in which he had placed defendant, and in failing to slacken the speed of said truck and stop said truck after he saw and observed, or should have seen and appreciated the fact that defendant had been driven off the main traveled portion of the highway and into a mail box, and in carelessly and negligently failing to avoid said collision by stopping said truck or slowing down, or changing the course thereof; and said accident and collision resulted from no negligence whatsoever on the part of defendant."

The case was tried to a jury. In the closing argument, plaintiff's counsel said:

"I want to relate to you an incident that happened to me yesterday that shows of what little use a mirror is. We were coming across the Burnside bridge. * * * We were going a little too fast and I thought I was watching the mirror, and when I got down to the Burnside approach to Second street I heard the siren, and a police officer tagged me. In other words, the point I am making is, it doesn't make any difference in this case whether he had one mirror or a hundred mirrors. It didn't do any good with me; it wouldn't have done any good for Mr. Kuehl."

At the point in the above statement indicated by asterisks, objection was made by defendant, overruled by the court, and an exception taken to the ruling of the court permitting counsel to relate personal experiences to the jury. At the conclusion of the statement, the following colloquy occurred:

"Mr. Holland: I would like the evidence related by counsel stricken and the jury instructed to disregard it. It is not proper evidence in this case.

"The Court: It is not evidence at all.

"Mr. Holland: And that they should disregard it.

"The Court: Well, it is not evidence. Therefore, they should not consider it as such, statements of counsel. That is what you refer to, is it not, Mr. Holland?

"Mr. Holland: Surely. The argument is supposed to be upon the evidence, and nothing else.

"Mr. Green: Or the inference which we can draw from those conditions that were surrounding the situation as they were at that time, and we can relate it to machines, or to mirrors, or to tires, or to wheels or anything else and draw those inferences that are properly deducted therefrom, and that is all I have done, and the jury will agree with me. And as I say, it wouldn't have made any difference whether there was one mirror on that car or whether there were one hundred mirrors, because the cause of this accident— and under the testimony, two witnesses, Kuehl and his son, say that Mr. Kuehl turned out first."

The question whether plaintiff's negligence, in failing to have his truck equipped with a rear view mirror, contributed to or was the sole cause of the collision is a very important and a very close question in the case.

Plaintiff and his son, who was with plaintiff in the cab of the truck, testified as to the aperture in the canvas and as to the use plaintiff made of it. Plaintiff testified that just before turning out to pass the Velie car he looked through the aperture in the canvas and saw a car about 25 or 30 feet (as far as from the wit-

ness chair to the end of the courtroom) directly behind him, but he did not see defendant's car to recognize it as the car involved in the collision until it was almost abreast of him and about to strike the mail box. Plaintiff's son testified that after plaintiff turned out to pass the Velie car plaintiff looked through the peep hole in the canvas, and about five seconds thereafter the son did likewise and saw defendant coming up behind them.

Defendant and the young man accompanying him testified that plaintiff had not turned to his left when defendant started to pass him. They also testified that the front end of defendant's car was about half way past plaintiff's truck when plaintiff's car started to turn out. On that point the testimony of the driver of the Velie car is that a car passing her on her left attracted her attention, to her surprise, as she looked out she saw two cars instead of one; plaintiff's car was slightly ahead of witness when she first saw him, and defendant's car was slightly ahead of plaintiff's car. The driver of another car, who was some distance to the rear of defendant's car when the collision occurred, testified that plaintiff had turned to his left just before defendant did, that this witness did not know that there was another car ahead of plaintiff; but, upon the question of plaintiff's course as defendant started to pass plaintiff, this witness's testimony sheds but little if any light. This constitutes all of the testimony in that regard.

In this state of the record, the statement of plaintiff's counsel of his experience with a rear view mirror supplied plaintiff with matter strongly supporting plaintiff's side of the controversy, namely, that a rear view mirror would not have enabled him sooner to see defendant's car. Because the question of plaintiff's

alleged contributory negligence is so vital and the testimony thereupon so close, it was error to permit the jury to consider this personal experience of plaintiff's counsel: *Webb v. Isensee,* 85 Or. 148 (166 P. 544); *Zimmerle v. Childers,* 67 Or. 465 (136 P. 349); *Western Union Tel. Co. v. Burgess,* (Tex.) 60 S. W. 1023; *Morrison v. Noone,* 78 N. H. 338 (100 Atl. 45); *Sheldon Fixture Co. v. Atlas Oil Co.,* 178 Iowa 413 (159 N. W. 983); *Greissing v. Oakland Motor Co.,* 204 Mich. 116 (169 N. W. 842); *Tuttle v. Dodge,* 80 N. H. 304 116 Atl. 627); *Perry v. Western N. C. R. Co.,* 128 N. C. 471 (39 S. E. 27); *Halsey v. Bell,* (Tex. Civ. App.) 62 S. W. 1088; *Fordyce v. Withers,* 1 Tex. Civ. App. 540 (20 S. W. 766); *Cutler & Martin v. Skeels,* 69 Vt. 154 (37 Atl. 228); *Campbell v. Maher,* 105 Ind. 383 (4 N. E. 911); *Bullard v. Railroad,* 64 N. H. 27 (5 Atl. 838, 10 Am. St. Rep. 367); *Brown v. Swineford,* 44 Wis. 282, 294 (28 Am. Rep. 582); *Gutzman v. Clancy,* 114 Wis. 589 (90 N. W. 1081, 58 L. R. A. 744); *Atherton v. Defreeze,* 129 Mich. 364 (88 N. W. 886); *Britton v. Mich. Central R. Co.,* 118 Mich. 491 (76 N. W. 1043); *Crossett v. Brackett,* 79 N. H. 102 (105 Atl. 5).

Having experienced the magnetic persuasiveness of this counsel's pleasing personality, and realizing the high position in the legal profession deservedly held by him, the writer is unable to treat his utterances lightly, or hold that they were ineffective with the jury. On the contrary, the writer thinks that the delineation of counsel's personal experience with a rear view mirror, approved as it was by the court, may have been sufficient to exculpate his client from the charge of having contributed to the accident by failing to have his truck equipped with such a device.

The jury were not instructed to disregard these utterances, nor were they advised to that effect as in

*Marshall v. Olson,* 102 Or. 502 (202 P. 736). In the colloquy between court and counsel, above quoted, the court said that they should not be considered as evidence. If this statement of the court could be construed as an instruction to the jury, it would mean that the objectionable statement should be considered as argument. Counsel's statement of his personal experience in its entirety should have been stricken from the record and the jury instructed to disregard it: *Graham v. Corvallis & Eastern R. Co.,* 71 Or. 477 (142 P. 774); *Chrudinsky v. Evans,* 85 Or. 548 (167 P. 562).

In some of the cases heretofore considered by this court wherein the question of alleged improper statements by counsel in argument has been presented, such statements have been held to be harmless because of such little materiality, as in *Ragan v. MacGill,* 134 Or. 408 (292 P. 1094). In others, no ruling of the lower court was involved, as in *State v. Abrams,* 11 Or. 169 (8 P. 327). In others, an instruction, that the jury should disregard such statements has cured the error, as in *Ragan v. MacGill,* supra, and *Marshall v. Olson,* supra, and *Rostad v. Portland Ry., etc., Co.,* 101 Or. 569 (201 P. 184).

The case at bar does not come within the scope of those cases.

Paragraph 15 of the canons of professional ethics of the American Bar Association provides, among other things, that "it is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause." The opinion of the court herein seems to hold that the spirit of this canon, if not the letter, was violated by counsel for plaintiff. With this holding the writer is in accord.

The opinion of the court, however, if the writer understands it aright, announces that, because plaintiff took one fleeting backward glance through the peephole in the canvas behind him and heard the sound of an auto horn, plaintiff was apprised of all the knowledge that he could have obtained by the use of such a rear view mirror as the law prescribes for auto trucks; and, hence, the absence of such a mirror and the consequent failure, on plaintiff's part, to make use of it are of no moment. I cannot subscribe to such a statement.

Indeed, in this respect the opinion of the court appeals to the writer as being a marvelous endorsement by a high authority of the supposedly splendid qualifications of plaintiff for the role of a trick blindfolded driver. It ascribes to the plaintiff attributes which transcend those of specially trained and wonderfully gifted blind musicians, for with these musical prodigies the aid of the sense of touch as well as that of hearing attends, while in the case at bar all that plaintiff had by which he is thus said to have acquired all the knowledge possible was the mere sound of an auto horn. The painful and distressing result, as shown by the testimony, either refutes the encomium thus judicially accorded to plaintiff or demonstrates that he made miserable use of his superlatively unusual power of acquiring knowledge through the auditory canal alone.

On the contrary, it is the writer's belief that plaintiff had no knowledge at all of defendant's actual whereabouts until it was too late to avoid a collision. He had merely seen a Ford car behind him. Actually there were two such cars there. He had heard the sound of a horn. The crucial question in this case is whether or not, if plaintiff had had and had used a

rear view mirror, he would have known enough about the progress of defendant's car and the state of the traffic to his rear to have enabled him to avoid the collision.

As the writer reads the opinion of the court, it declares that the supposed practice of traffic officers in trailing suspected speedsters arises to the dignity of historicity; and, hence, counsel's personal experience, not in being trailed, but in failing to discern the presence of the officer, could have had no effect upon the jury in determining whether or not plaintiff, by the proper use of a rear view mirror, would have discerned defendant's attempt to pass before defendant's car was well alongside that of plaintiff. To the writer such an assumption is unreasonable.

Its unreasonableness is greatly augmented by the strength and skill in advocacy of the able and affable attorney whose personal experience and inmost thoughts were thus submitted to the jury.

As the writer views it, the opinion of the court leaves out of account the fact that the contribution which counsel thus made to the record was not only to the effect that an officer trailed and arrested him but also that he thought that he was watching the mirror, and that the use of a mirror would not have availed plaintiff because counsel's mirror had not saved counsel from arrest. Since when have the thoughts of counsel, as to his personal experience in the use of a rear view mirror, or in failing to evade the vigilance of the Portland constabulary, been heralded in the press, proclaimed by the radio, famed in story, preached in the pulpit, transmitted by the legend and become the subject of judicial knowledge and the commonplace of the jury room? Neither *Willis v. Lance,*

28 Or. 371 (43 P. 384, 487), nor the case of *Dennis v. State,* 139 Ala. 109 (35 So. 651), is a case wherein counsel stated his personal experience or revealed the state of his mind during such experience. Neither is *Huber v. Miller,* 41 Or. 103 (68 P. 400). The writer is not in harmony with that case, however, for he thinks that vituperative argument and vilification of litigants should be disapproved; but that question is not involved in the case at bar.

To summarize the points of this dissent, they are as follows:

The court holds that the question involved is whether the failure of plaintiff to have a rear view mirror caused the collision. The writer thinks that the question is whether plaintiff was guilty of contributory negligence in that regard.

The court holds that a fleeting glance through the aperture in the canvas afforded plaintiff all the information he would have obtained by the use of a rear view mirror properly installed and complying with the provisions of the statute in that regard.

The writer thinks that the use of such a mirror would have enabled the plaintiff to know that it was safe to slacken his speed, drop back and to his right and avoid the collision. The writer thinks that plaintiff was oblivious to the actual state of the traffic.

The opinion of the court seems to hold that anything within the common knowledge of jurors is the proper subject of corroborative personal experience on the part of counsel although no case has been cited to that effect.

The opinion of the writer is that the relation of the personal experience of counsel is never proper.

As the writer understands it, the court holds that the practice of policemen in making arrests is so well known that a juror, who would give any consideration to counsel's personal experience in failing to observe the condition of the traffic to his rear notwithstanding counsel thought that he was watching his mirror or to counsel's statement that such a mirror "didn't do any good for me and it wouldn't have done Mr. Kuehl any good," is an oddity.

The writer thinks that jurors like judges have the ability to appreciate a personal appeal by such a gentleman as counsel, and that either a judge or a juror, who is uninfluenced by it, is an oddity.

The opinion of the court appears to treat the statutory mandate requiring the installation of rear view mirrors upon auto trucks as a triviality; and the opinion by its questions intimates that counsel's statement was only a passing reference to the commonplace household mirror with which everyone is or ought to be thoroughly familiar.

The writer remembers the difference between counsel upon argument of this case as to what is required by statute in respect to rear view mirrors upon trucks, and ventures to assert that neither counsel nor any member of the court ever made personal use of such a rear view mirror. Holding this view, he is impelled to construe the questions asked in the opinion as so narrowly restrictive as to be irrelevant. In a case of killing by gunshot, one might ask "Is it of any serious moment that one has a gun in his possession?" Possession of the gun plus aiming it and discharging it into the body of the victim, plus premeditation, deliberation and malice may constitute murder in the first degree.

The mirror plus its installation upon the auto, plus its use, plus the traffic, plus the thoughts of counsel, plus the failure to evade the officer, plus the expressed conclusion that the rear view mirror had done counsel no good and would not have aided plaintiff, constitute the subject-matter of the improper statement. The writer cannot understand why the court asks only about one phase and a harmless phase, of the statement, and he is equally at a loss to find support either in experience or in the record that such an instrumentality as a properly installed rear view mirror upon an auto truck is a commonplace of the household, or that one unfamiliar with its use is ignorant and stupid.

At plaintiff's request, the following instructions were given in the court's charge to the jury:

"The driver of a vehicle upon a highway about to be overtaken and passed by another vehicle approaching from the rear shall give way to the right in favor of the overtaking vehicle on suitable and audible signal being given by the driver of the overtaking vehicle, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle. * * *

"Every motor truck shall be so equipped with a mirror or other device as to enable the driver thereof to have such a clear and unobstructed view of the rear at all times and under all conditions of load as will enable him to see any other vehicles approaching from the rear of an unobstructed road.

"You are instructed that the provisions of the motor vehicle laws of the state of Oregon which I have just read to you apply to both the defendant and the plaintiff at the time of the accident, and a violation of such provisions by either of the parties in this action is of itself negligence."

The instructions above quoted are inaccurate. In the absence of other error as above noted, the writer

is of the opinion that the inaccuracies therein would not warrant a reversal. These inaccuracies consist in applying to defendant the rule of the road governing the driver of a vehicle about to be overtaken and passed by another vehicle; and in saying that the provisions of the motor vehicle law, requiring every motor truck to be equipped with a rear view mirror, applied to defendant when in point of fact defendant was not at any time about to be overtaken or passed, and defendant's automobile was not a truck.

This case should be reversed.

RAND, J., concurs.