### TOWNSHIP OF DANBY *v.* BEEBE.

1 SEALS—EFFECT OF USE—STATUTORY PROVISIONS.
Section 10185, 3 Comp. Laws, as respects their consideration, places simple executory, and sealed executory, contracts upon the same footing.

2. BONDS—CONSIDERATION—NECESSITY.
A sealed bond binding the obligors to pay into the bridge fund of the township in which they reside a certain sum of money, in case the building of a bridge on the line between adjoining townships should be ordered by the board of supervisors, is a

mere voluntary promise not sustainable as a gift nor enforceable as a subscription to an object of public utility or necessity.

Error to ·Ionia; Davis, J.  Submitted November 15, 1906.  (Docket No. 117.)  Decided March 5, 1907.

Debt by the township of Danby against Henry O. Beebe, George Hughes, Thomas J. Lockwood, and Stuart M. McKee for the amount of a bond.  There was judgment for plaintiff, and defendants bring error.  Reversed, and no new trial ordered.

The bond, the subject of the suit, reads as follows:

"Know all men by these presents, that we, Henry O. Beebe, George Hughes, Thomas J. Lockwood, and Stuart M. McKee, of the township of Danby, Ionia county, Michigan, are held and firmly bound unto the township of Danby, Ionia county, Michigan, in the sum of five hundred ($500) dollars lawful money of the United States of America, to be paid to the said township of Danby, or to its certain attorney, successors or assigns, and to which payment well and truly to be made, we bind ourselves, heirs, executors, and administrators, and each and every of them, firmly by these presents.

"Sealed with our seals, dated the 2nd day of January, A. D. 1903.

"The condition of this obligation is such that, whereas, the board of supervisors of Ionia county will be petitioned at the January meeting held by them in 1903, by the township board of the township of Portland, Michigan, for an order compelling the township of Danby, aforesaid, to enter into the construction of a bridge across Grand river on the line between Danby and Portland townships, as set forth in the petition herein mentioned, and whereas, the obligors herein mentioned are desirous of having such a bridge constructed at such point, and have agreed with the township board of Danby township to expend not to exceed the sum of five hundred dollars in the construction of the abutments at the Danby end of such bridge, if the same should be ordered constructed by the board of supervisors, and wish to assure the said board of Danby township to that effect:

"Now, therefore, we, the said Henry O. Beebe, George Hughes, Thomas J. Lockwood, and Stuart M. McKee, do hereby agree to pay into the bridge fund of said township of Danby the sum necessary to construct the abutments at the Danby end of such bridge, not exceeding the sum of five hundred dollars, if the construction of such a bridge should be ordered by the county board of supervisors at their meeting held in the month of January, 1903, before the completion of such bridge, and not later than the first day of January, 1904, and if the said above-named obligors shall well and truly pay for the construction of such abutments or such sum as may be necessary, not exceeding said sum of five hundred dollars, at the time and in the manner herein mentioned, then this obligation is to be void, otherwise to remain in full force."

.It is signed by the obligors and sealed.

The township of Danby lies south of Portland township, in Ionia county. At the October session of the board of supervisors of the county, in the year 1902, the township board of Portland presented a petition asking the board to order the construction of a bridge across Grand river on the line between said townships and apportion the expense thereof. Against such action, a remonstrance was filed by the township board of Danby, showing, among other things, that at the annual town meeting in April, 1902, the electors of the township had voted down the proposition to raise $2,000 to construct such a bridge. The matter was referred to a committee, which reported in favor of ordering the bridge to be constructed, but the report was not adopted; the vote standing seven yeas and fourteen nays. At the January, 1903, meeting of the supervisors, the petition of Portland township was renewed, and the vote of the board of supervisors, as to numbers voting aye and no, was exactly reversed; this over the repeated remonstrance of Danby township, which was later, in form of a protest and argument and notice that the carrying out of the resolution would be resisted in the courts, served upon the supervisors or upon its committee. This protest asserts that the valuation of Port-

land is $1,694,049, and that of Danby $732,320, according to which the resolution for an equal division of the cost of the bridge placed 70 per cent. upon Danby and 30 per cent. upon Portland. Litigation ensued, ending with the determination found reported in *Board of Sup'rs of Ionia Co.* v. *Ionia Circuit Judge,* 134 Mich. 412. Thereafter the bridge was constructed. It was known in December, 1902, that Portland township would renew its petition to the board of supervisors. Defendants are farmers living in Danby on the road leading to the point of the proposed bridge and especially benefited by the construction of the bridge. They executed the bond in suit. They presented it to the township board of Danby, and asked that opposition to the action of the supervisors be not made, and also preferred a form of resolution, to be passed by the board, to join with Portland in asking that the bridge be constructed. The board rejected the proposition, and defendants filed the bond with the clerk and took a receipt therefor. No express conditions accompanied the delivery of the bond to the township clerk. On the 5th of January, two of defendants appeared before the board of supervisors, represented that they had filed the bond for the benefit of the township, stating, among other things, that if the bridge was ordered to be constructed they would pay the township of Danby $500, exhibited the town clerk's receipt, and urged that the petition of Portland be granted. Defendants, after the supervisors had ordered the bridge to be constructed, appeared before the town board and asked that further opposition to the bridge be not made. There is testimony tending to prove that it was stated by or for them, to the board, that, if litigation was had, they should consider themselves released from their undertaking. The bond was not withdrawn or demanded. The bond remained on file with the clerk of the township until after the decision of this court which has been referred to. On October 8th, one of defendants demanded the bond from the successor in office of that township clerk to whom it had been delivered. He declined to give it up. On Octo-

ber 19, 1903, the town board, by formal resolution, accepted the bond.

*R. A. & W. E. Hawley*, for appellants.

*A. A. Ellis*, for appellee.

OSTRANDER, J. (*after stating the facts*).   Passing all contentions relating to the delivery and acceptance, according to its terms, of the bond, we go at once to the further, and the controlling, question, which is, whether, assuming the bond to have been so delivered and accepted, it is a valid obligation in the hands of the obligee.   No consideration, in fact, moved from the obligee to the obligors, and no burden has been assumed, or undertaking begun, by the obligee in reliance upon the bond.   The act or thing which is recited as a condition precedent to paying the money was not the act of, and did not spring from the action of, the obligee.   Nor did it move at the instance of the promisors.   At most, they aided action moved for by a third party.   The validity of the bond, if it is valid, depends, then, upon the facts that the bridge was of peculiar value to the obligors, and that the execution and delivery to the plaintiff of the bond influenced the supervisors to lay a burden upon the plaintiff township.   There is judicial precedent for the proposition that the statute (3 Comp. Laws, § 10185), which provides that in any action upon a sealed instrument the seal thereof shall only be presumptive evidence of a sufficient consideration, which may be rebutted in the same manner and to the same effect as if such instrument were not sealed, has no application in a case where a consideration, passing between the parties thereto, was never contemplated.   *Aller* v. *Aller*, 40 N. J. Law, 446.   The reasoning employed is that, no consideration for the promise having been contemplated, in the absence of fraud, illegality, or mistake, the rights of creditors not being involved, the law should, notwithstanding the statute, execute a promise made in a writing, sealed and delivered with the most solemn sanc-

tion known to the law; that, if such an instrument contained the recital that it was given upon no consideration, it would not for that reason be refused enforcement.   See, also, *Harris* v. *Harris' Ex'r*, 23 Grat. (Va.) 737.   But the effect given to our statute has been stated to be one which with respect to the consideration places simple executory, and sealed executory, contracts upon the same footing.   *Green* v. *Langdon*, 28 Mich. 221, 226; *Hobbs* v. *Electric Light Co.*, 75 Mich. 550.   It must be held, in the light of the evidence, that the bond is a mere voluntary, gratuitous promise by the obligors to the obligee to pay a sum of money.   Being so, it cannot be sustained as a gift in jurisdictions in which a seal may be impeached. 4 Am. & Eng. Enc. Law (2d Ed.), pp. 665, 666; *Matter of James*, 146 N. Y. 78.

What has been said disposes also of the contention that the promise, though gratuitous, may be sustained and enforced as a subscription to an object of public utility or necessity (*Stevens* v. *Corbitt*, 33 Mich. 458; *Long* v. *Mayor, etc., of Battle Creek*, 39 Mich. 323), since the promise is not made to one performing or expected to perform anything in reliance upon the promise; nor, treating the promise, as we must, as single, was it made in consideration of other promises or contributions.

The judgment is reversed, and, as it appears that upon no theory can plaintiff recover, no new trial is awarded.

CARPENTER, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.