THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. IRVIN H. TURNER, Plaintiff in Error.

*Opinion filed December 16, 1914.*

1. CRIMINAL LAW—*what statement is essential to affidavit for a continuance.* A motion for a continuance upon the ground of an absent witness is property denied, where the affidavit in support of the motion contains no statement that there was any expectation or reasonable prospect of obtaining the presence of the witness at the next term of court or at any future time.

2. SAME—*the statute has made no provision for depositions in criminal cases.* There is no statutory provision in Illinois for the admission of depositions in evidence in criminal cases, and the court may properly refuse to require the People to consent to the admission of a deposition in evidence or have the cause continued.

3. SAME—*when an instruction characterizing offense of incest is not misleading.* An instruction stating, in the language of the statute, that if a father shall rudely and licentiously cohabit with his own daughter the father shall be imprisoned in the penitentiary for a period not exceeding twenty years is not misleading, even though many acts of intercourse other than the one the People have elected to prosecute have been proven, where another instruction expressly requires an acquittal unless the acts which the People have elected to prove are established.

4. SAME—*use of the word "creditable" for "credible" does not render instruction misleading.* The use of the word "creditable" for "credible," in an instruction stating the rule in regard to the right of the jury to reject the testimony if they believe the witness has willfully testified falsely to a material fact, except so far as it may be corroborated by other "creditable" facts or circumstances, does not render the instruction misleading.

5. SAME—*when instructions as to weighing evidence and not following sympathy should be given.* In a prosecution for incest, where the evidence is close and highly contradictory and the circumstances detailed are unusually repulsive and unnatural, it is reversible error to refuse to instruct the jury that in weighing the evidence they have a right to take into consideration the common knowledge and experience of mankind and the course of the laws of nature, and that they should not allow their verdict to be influenced by prejudice against the defendant or sympathy for the daughters who testified against him.

6. SAME—*statement on former trial, though stricken out in that case as incompetent, may be shown as a contradictory statement.*

A statement made in a former trial, though stricken out in that case as incompetent, is not incompetent as a contradictory statement in another trial and may be received in evidence for that purpose if the witness testifies differently.

WRIT OF ERROR to the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

BEACH & TRAPP, and HUMPHREY & ANDERSON, for plaintiff in error.

P. J. LUCEY, Attorney General, E. EVERETT SMITH, State's Attorney, and D. E. DETRICH, (PETER MURPHY, and GEORGE P. RAMSEY, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error was convicted of incest, and has sued out a writ of error to reverse the judgment.

Error is assigned by plaintiff in error on the denial of his application for a change of venue. Two indictments for incest were returned against the defendant at the same term and applications for a change of venue were made in each case and denied. The plaintiff in error was convicted on one indictment and the judgment was reversed by this court at the October term, 1913. (*People* v. *Turner*, 260 Ill. 84.) It was held that there was no error in denying the application for a change of venue. The present record is identical with the record in that case so far as the application for a change of venue is concerned, and there was therefore no error in denying the application.

Before the trial the plaintiff in error made a motion for a continuance on account of the absence of Clara H. Campbell, a material witness in his behalf, and filed an affidavit setting forth that she was now a resident of Seattle, in the State of Washington, and was too sick to come to Illinois to attend the trial; that she had been a resident of Decatur, Illinois, for many years before August, 1912, and would

testify to facts material to the defense which could not be proved by any other witness, such facts being stated in the affidavit in detail. The affidavit further stated that the plaintiff in error had caused the deposition of this witness to be taken upon oral interrogatories upon due notice to the State's attorney, with full opportunity to be present and cross-examine, and that such deposition had been returned to the clerk of the court and was on file in the cause. The motion asked that the cause be continued or the deposition be admitted in evidence on the trial. The court overruled the motion, and it is insisted that a continuance should have been allowed or the deposition should have been admitted in evidence. The affidavit was not sufficient to require the granting of a continuance, because it contained no statement that there was any expectation or reasonable prospect of obtaining the presence of the witness at the next term of court or at any future time. Our statutes make no provision for the taking of depositions in criminal cases, but it is contended that the court had the discretionary power, which it should have exercised, to postpone the trial unless the prosecution would consent to the admission of the deposition. Originally the common law courts had no power to procure the testimony of witnesses by deposition and it was not their practice to receive depositions in evidence. Depositions are not the best evidence the nature of the case admits of, and the presence of the witnesses in open court and their examination in the presence of the judge and jury were regarded as of such importance that an order for the examination of a witness on interrogatories could only be obtained by consent. (2 Tidd's Pr. 810.) The courts of common law sometimes used indirect means to coerce the adverse party into a consent to the examination of witnesses who were absent in foreign countries, under a commission for that purpose. "These means of coercion were various, such as putting off the trial or refusing to enter judgment, as in case of non-suit if the defendant was

the recusant party; or by a stay of proceedings till the party applying for the commission could have recourse to a court of equity by instituting a new suit there auxiliary to the suit at law. But subsequently the learned judges appear not to have been satisfied that it was proper for them to compel a party by indirect means to do that which they had no authority to compel him to do directly, and they accordingly refused to put off a trial for that purpose." (1 Greenleaf on Evidence, sec. 320.) This inconvenience has been remedied by statutes which provide in civil cases for taking the depositions of witnesses whose attendance at the trial cannot be procured, and in some of the States, as in Kentucky, Indiana and Massachusetts, statutes have been enacted allowing the defendant in a criminal case to take the depositions of material witnesses in his own behalf. The legislature of this State has not seen fit to provide for such a method of obtaining testimony in criminal cases, and the courts ought not indirectly to change the law by compelling prosecutors to consent to the introduction of evidence for the defendant not legally admissible. We do not recognize the existence of such power in the courts of this State.

It is insisted that after a consideration of all the evidence there remains so serious a doubt of the guilt of the plaintiff in error that the judgment should be reversed for that reason. The evidence was conflicting to the last degree. The alleged victim of the crime was the plaintiff in error's daughter Tona, who was seventeen years old at the time of the trial,—three years after she testified that the relations with her father which formed the basis of the indictment began. She, her sister Grace, three years older, and the plaintiff in error, were the only witnesses who testified directly in regard to the alleged criminal acts, all of which the plaintiff in error denied. The sisters testified to many acts of sexual intercourse between the plaintiff in error and Tona, and narrated in detail his treatment of

her in the course of the maintenance of their sexual relations for a period of about ten months prior to his arrest. These details need not be stated or discussed in this opinion. Some of them are claimed by the counsel for the plaintiff in error to be unreasonable, incredible and impossible. The testimony of physicians was introduced on either side to show the possibility or impossibility of some of the things testified to. It was shown that after his arrest and indictment the plaintiff in error had a contracted liver, a chronic inflammation of the gall bladder, a chronic inflammation of the appendix and an enlarged heart, and that he had suffered from these conditions for several years. He was operated upon for appendicitis and his appendix was removed. One of his kidneys was also found congested and enlarged. In September, 1912, between nine and ten months after the finding of the indictment, Tona was taken by her aunt for examination to a physician, who made an examination of her sexual organs and testified that he found the vaginal orifice and hymen normal, the hymen unbroken and no physical indication that she had ever had sexual intercourse. Testimony of physicians was also introduced that sexual intercourse might occur without rupturing the hymen. The two girls and their aunt were the only witnesses introduced by the People in chief, and witnesses called to impeach them testified to statements of each of them more or less inconsistent with their testimony or showing animosity against the plaintiff in error. In the end the question of the credibility of the testimony of the two daughters of the plaintiff in error is the determining factor in the case. The case is one peculiarly calculated to excite passion or prejudice, and it was the right of the plaintiff in error to have the jury accurately instructed in all matters which might influence them in arriving at their verdict.

Complaint is made that the court instructed the jury, in the language of section 156 of the Criminal Code, that

if a father shall rudely and licentiously cohabit with his own daughter the father shall be imprisoned in the penitentiary for a period not exceeding twenty years. Evidence of many acts of sexual intercourse between the plaintiff in error and Tona Turner had been introduced, and it is argued that this instruction stated an abstract principle of law, and that from it the jury might infer that a verdict of guilty would be justified because of the continued intercourse or of any one act. The object of the instruction was only to call the jury's attention to the character of the offense charged. The prosecution, having been required to make an election, had elected to ask a conviction on the acts occurring November 26, 1911. By instruction No. 12 given for the defendant the jury were informed that the prosecution had so elected, and that unless they believed the defendant committed the crime at that time they must acquit; that they could not convict for any act or acts committed at any other time; that the evidence of other acts was admitted, not for the purpose of proving that the defendant had committed other offenses, but only as bearing on the question whether or not he committed the crime of incest on November 26, 1911. The jury could not have believed, under these two instructions, that they could find the plaintiff in error guilty of any other offense than that of November 26, 1911.

The second instruction is complained of because, in stating the effect of the defendant's willfully testifying falsely upon a material point in issue, it authorizes the rejection of the whole of such testimony except so far as it may be corroborated by other "creditable" proofs or circumstances in evidence in the case. The objection is to the use of the word "creditable," which, it is said, is not synonymous with "credible" but obsolete as having that meaning. It is true that the use of the word in that sense is not now common, but in this connection it could not have been misleading.

The plaintiff in error asked several instructions which were refused which in our judgment should have been given to the jury. The third and fourth instructions so refused were as follows:

3. "The court instructs the jury, as a matter of law, that in a criminal case the jury have a right to weigh and examine the evidence closely and carefully in the light of the common knowledge and experience of mankind, and you have a right to take into consideration the common knowledge and experience of mankind and the course of the laws of nature in determining whether the evidence is reasonable or unreasonable or probable or improbable and in determining what weight it is entitled to receive.

4. "And the court instructs you further, that when the evidence is heard, jurors have the right to test its weight by their knowledge and experience and their judgment derived from experience, observation and reflection. You are not bound to regard evidence precisely as given, but may consider its truth and weight by your knowledge of men, the affairs of life and the motives which influence persons. These are all proper and legitimate means of arriving at the truth in determining the issues in this case."

These instructions were important to the plaintiff in error and none of the instructions given included the principles they announce. "Jurors, when the evidence is heard, must test its truth, its weight and what it all proves, by their knowledge and judgment, derived from experience, observation and reflection. They are not bound to regard evidence precisely as given, but must consider its truth and weight by their knowledge of men, the business affairs of life, together with the motives which influence men. These are all legitimate and necessary means of arriving at the truth." (*Ottawa Gas Light and Coke Co.* v. *Graham,* 28 Ill. 73; *City of Chicago* v. *Major,* 18 id. 349; *Kitzinger* v. *Sanborn,* 70 id. 146.) There was much contradiction in the testimony; the circumstances were unusual; diverse

opinions of physicians were before the jury, and the case was one to which these instructions were specially applicable.

The eleventh refused instruction was as follows:

"The court instructs the jury that in determining the guilt or innocence of the defendant of the crime charged in this cause the jury should not allow any prejudice which they feel against such crime to influence them against the defendant, nor should the jury, in deciding whether the defendant is innocent or guilty, feel a prejudice against the defendant on account of the nature of the evidence against him, nor should the jury allow themselves to entertain a prejudice or bias against the defendant by reason of the fact, alone, that the witnesses against him are females; and you are further instructed that you should not allow the fact that any witness has shed tears or manifested emotion upon the witness stand to give rise in your minds to pity and arouse in your minds prejudice against the defendant in deciding the question whether he is innocent or guilty of the crime charged against him."

This instruction should have been given. Its object was to warn the jury against allowing either sympathy or prejudice to influence their verdict. It was said in *Jones & Adams Co.* v. *George,* 227 Ill. 64: "Instruction No. 17, which was refused, told the jury, somewhat awkwardly, that neither sympathy for the plaintiff nor prejudice against the defendant should influence their verdict. The instruction is correct in principle and we see no justifiable reason for refusing it. There was no other instruction in the series that covered this point."

Both Grace Turner and Tona Turner in their testimony fixed the time of the first intercourse between Tona and her father a few days before Tona's fourteenth birthday, February 8, 1911. The defendant attempted to contradict them by showing that at the January term, 1913, of the Logan county circuit court, at the trial of the indictment against the defendant for incest with Grace, they fixed this

date at the corresponding time in 1908. In the former trial this testimony was stricken from the record because it referred to an act with Tona which was not competent to be shown on the trial of an indictment for incest with Grace. The court refused to permit the statement to be given in evidence. If the statement was made, the fact that it was stricken from the record as incompetent did not make it incompetent in this case as a contradictory statement of the witness, and it should have been received.

During the trial of the other indictment, and before and after, Tona Turner was living in the Millikin Home, at Decatur, and it is also urged as error that the court refused evidence offered by the plaintiff in error that Ruth Hammond, the aunt who was a witness in both trials, had sent Grace Turner to Decatur to have her near Tona for the purpose of keeping her in league with herself and urging on the prosecution. It is proper to show the actions and conduct of witnesses as bearing on their motives. The fact that Mrs. Hammond had sent Grace Turner to Decatur for the purpose, as she expressed it, of keeping a line on the other children, sufficiently appears from the evidence. The evidence offered that she did this after hearing a motion for a continuance at a prior term, in which evidence of Mrs. Campbell was set out, was not necessary, when she had expressly stated her reasons for sending Grace Turner to Decatur.

It is further urged that the defendant was unduly prejudiced by statements of Tona Turner on the trial as to the relations of the defendant with his daughter Grace which were the subject of the prosecution in the former trial. An examination of the record shows that the court, on motion, excluded all evidence and statements of the witness which in any way related to the charge of incest with Grace Turner. Owing to the character of the charges in both cases, some of them being alleged to have occurred at the same time in each case when both Grace and Tona

Turner were present, it was difficult to avoid reference to those matters, but the court by his rulings tried in every way possible to keep out any allusion or reference to the charges which were the basis of the indictment for incest with Grace Turner, and in our judgment nothing prejudicial to the defendant was received.

For the errors indicated the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*