Argued June 28, affirmed October 11, 1921.

ROSTAD *v.* PORTLAND RAILWAY, LIGHT & POWER CO., A CORPORATION.

(201 Pac. 184.)

**Carriers—A Complaint for Injuries to Passenger Boarding Street-car Held Sufficient.**

1. In an action for injury to a passenger sustained while boarding a street-car, the complaint alleging that "while plaintiff was boarding one of said cars defendant carelessly and negligently started the same, and as a direct and proximate result of said negligent act of defend-

---

1. On liability of street railway company for negligence in starting street-car before passenger is seated, see notes in Ann. Cas. 1912D, 582; 42 L. R. A. 294; 4 L. R. A. (N. S.) 558; L. R. A. 1915A, 797.

ant plaintiff was thrown under the wheels of said car," sustaining specified injuries, *held* sufficient on motion for nonsuit to charge negligence, as against objection that it does not show facts sufficient to charge defendant, and that it was a mere conclusion to say that the car was started negligently.

### Carriers—Fact of Accident to Passenger Boarding Car Claimed to have Been Prematurely Started Held Sufficient to Take Case to Jury.

2. In an action for injury to passenger sustained while boarding a street-car, claimed to have been prematurely started, the fact of the accident *held* sufficient, on motion for nonsuit, to take the case to the jury on the question of whether the car employees were at fault.

### Carriers—Complaint Held to Show Relationship of Passenger and Carrier.

3. Complaint alleging that plaintiff was injured while boarding one of defendant's street-cars which had stopped to take on passengers, as a result of defendant's negligence in starting the car, without directly alleging plaintiff was a passenger and defendant a common carrier, *held* sufficient on motion for nonsuit to show the relationship of passenger and carrier.

### Appeal and Error—Misconduct of Counsel in Argument to Jury Held not Ground for Reversal in Absence of Request for Further Action by Court.

4. In action against street railway for injuries to passenger, misconduct of plaintiff's counsel in stating, during argument to jury without evidence thereof, that the railway company's surgeons had neglected the passenger and had improperly cut off her leg and arm, *held* not ground for reversal, where court sustained objection thereto and directed jury not to consider statement, in absence of request for additional relief.

### Trial—Instruction Directing Jurors to Consider Their Experience as Men of Affairs Held Proper.

5. In an action in which jurors had been carefully instructed as to the preponderance of the evidence, contradictory evidence, presumption as to witness speaking the truth, and as to the jurors being exclusive judges of the credibility of witnesses, instruction directing jury to "bring to your assistance your experience as men of affairs" *held* proper, since such experience may be considered in passing on credibility of witnesses.

### Trial—Jurors' Personal Knowledge of Probative Fact not Considered in Deciding Case.

6. Under Section 868, Subdivision 1, Or. L., jurors must act with legal discretion and in subordination to the rules of evidence, and must not consider their personal knowledge of probative facts in deciding the case.

---

6. On right of jurors to act on their own knowledge, see notes in 31 L. R. A. 489 and 37 L. R. A. (N. S.) 790, 793.

**Damages—Not Recoverable for Mental Anguish Alone.**

7.   Mere mental anguish, unaccompanied by physical injuries, is not ground for damages.

**Damages—Recoverable for Mental Anguish Directly Caused by Injury.**

8.   Physically injured person may recover for mental anguish which is the direct, natural, and proximate result of the injury.

**Damages—Instruction as to Mental Anguish Approved.**

9.   Instruction allowing recovery for physical pain and mental anguish which plaintiff "has endured, or will in the future be obliged to endure, all as a direct natural and proximate result of the injury," *held* proper, as against the objection that it allowed recovery for future mental anguish; collateral distress not being included.

From Multnomah: Robert Tucker, Judge.

Department 1.

The defendant admittedly operates a street railway system in the City of Portland, part of which is located on East Fiftieth Street at its intersection with Twenty-ninth Avenue. The plaintiff sues for damages for injuries which she claims to have sustained while boarding defendant's cars at that place when and where they had been stopped for the reception of passengers.

The charging part of the complaint is as follows:

"That on or about the thirtieth day of March, 1920, defendant had a train of cars stationed at said 29th Ave., and East 50th St., and was taking on a number of passengers, and while plaintiff was boarding one of said cars, defendant carelessly and negligently started the same, and as a direct and proximate result of said negligent act of defendant, plaintiff was thrown under the wheels of said car, injuring and bruising her body and injuring and bruising the ligaments and tendons of her right ankle and causing the loss of her left leg and left arm, and fracturing her

8.   On mental suffering arising from contemplation of disfigurement or mutilation as element of damages for personal injuries, see notes in 15 L. R. A. (N. S.) 775; L. R. A. 1916E, 898.

skull; that the shock and jar incident to, and in connection with said injuries, has rendered plaintiff extremely nervous; that all of said injuries have, and will continue for all time to come, caused plaintiff to suffer great physical pain and mental anguish, and that said injuries are permanent and to plaintiff's damage in the sum of $100,000.''

This allegation is traversed by the answer, with the exception that the defendant admits the plaintiff met with an·accident on the day named.

The new matter in the answer charges contributory negligence on the part of the plaintiff in that she attempted to board a moving train after passengers had been taken on the same and the train had resumed its journey. This is traversed by the reply.

The plaintiff had judgment, and the defendant appeals.                                     Affirmed.

For appellant there was a brief over the names of *Messrs. Griffith, Leiter & Allen* and *Mr. F. J. Lonergan,* with an oral argument by *Mr. C. R. Peck.*

For respondent there was a brief over the names of *Mr. Henry E. McGinn* and *Messrs. Davis & Farrell,* with oral arguments by *Mr. McGinn* and *Mr. W. E. Farrell.*

BURNETT, C. J.—The errors assigned which have been submitted in argument are, first, that the court overruled the defendant's motion for nonsuit, which was based upon the proposition that the complaint fails to state a cause of action and that there was no evidence offered disclosing any actionable negligence on the part of the defendant proximately causing the accident complained of. The second contention of the defendant is based on misconduct of counsel for

the plaintiff in arguing the case to the jury, and the ruling of the court thereupon. A third complaint about the rulings of the trial court is predicated upon the following instruction given to the jury:

"Now, gentlemen of the jury, you have heard all the evidence, and, as stated to you, you will analyze the evidence, you will bring to your assistance your experience as men of affairs, and endeavor to ascertain where the truth is in this controversy. In case you should arrive at a verdict or find in favor of the plaintiff, it will then be your duty to approach the question of damages."

Finally, it is claimed that the court was wrong in giving the following instruction:

"If you find for the plaintiff in this case, you will assess an award to her by your verdict such sum of money as will fairly, justly and fully compensate her for the injury which you will find from the evidence she has sustained, for the physical pain and mental anguish, if any, she has endured, or will in the future be obliged to endure, all as a direct, natural and proximate result of the injury, not exceeding the amount demanded in the complaint."

1, 2. As to the sufficiency of the complaint, the contention is, that merely starting the car, although it is said to have been done carelessly and negligently, does not show facts sufficient to charge the defendant. The argument is, that starting a car is one of the commonest acts in the management of a street railway system, innocent in itself, and that it is a mere conclusion to say that it was done negligently. Taking the whole language of the allegation together, however, we learn that this happened while the plaintiff was boarding one of the cars, and further, that "as a direct and proximate result of said negligent act of defendant, plaintiff was thrown under the

wheels of said car." This allegation was not attacked by demurrer, nor even yet by a motion for a new trial. It is held in *Bobbitt* v. *St. Louis United Rys. Co.,* 169 Mo. App. 424 (153 S. W. 70), that an allegation was sufficient which stated that the defendant "negligently, suddenly and violently started said car, * * thereby causing plaintiff to be jerked, jarred and thrown from said car to the street." And in *Galveston etc. R. R. Co.* v. *Thornsberry* (Tex.), 17 S. W. 521, it was held not necessary to allege a danger to the plaintiff and the defendant's knowledge thereof, if facts are stated from which that conclusion may be drawn. Also, in *Chicago City Ry. Co.* v. *Morse,* 98 Ill. App. 662, the principle was enunciated that the happening of an accident on account of the management of a car under the control of the defendant raised a presumption of negligence. In other words, a case is here presented in which an appliance under the control and management of the defendant inflicts an injury upon the plaintiff. Where the appliance is properly operated the ordinary result is the safety of the passenger, and hence when an accident occurs, it is sufficient to go to the jury as tending to show the fault of the one in charge of the appliance.

3. But it is contended that there is nothing to show that the plaintiff was a passenger. Indeed, it is not so directly said in the complaint, but after verdict we may deduce from the facts stated, the conclusion that the plaintiff was a passenger. Confessedly the defendant was operating a street railway. The allegation was that it had a train of cars stationed at a certain point and was taking on passengers. This constitutes an offer, deducible from circumstances, of course, that the defendant would take as passengers

all those who accepted the invitation. And it was also said that the plaintiff was "boarding one of said street-cars." This is a statement of an act on the part of the plaintiff from which may be drawn the conclusion that she had accepted the offer of the defendant, raising the contractual relation of carrier and passenger. The testimony presented on behalf of the plaintiff was that she ran down the street and grasped the handhold at the entrance of the car. Some witnesses say she was in the act of putting her foot on the step, while others say that she actually did so. In *Duchemin* v. *Boston Elevated Ry. Co.,* 186 Mass. 353 (71 N. E. 780, 104 Am. St. Rep. 580, 1 Ann. Cas. 603, 66 L. R. A. 980), it was held that going towards a car, intending to board the same, does not make one a passenger, but when the car is stopped to receive passengers, "any person actually taking hold of the car and beginning to enter it is a passenger." This is the doctrine taught by such authorities as *Indianapolis etc. Rapid Transit Co.* v. *Walsh,* 45 Ind. App. 42 (90 N. E. 138).

The question as to the sufficiency of the complaint is very close. For instance, it is not directly stated that the defendant was a common carrier or engaged in the transportation of passengers, or that the plaintiff was a passenger. Indeed, it is said in *Raming* v. *Metropolitan Street Ry. Co.,* 157 Mo. 477 (57 S. W. 268), that an allegation that the plaintiff boarded a car with the intention of becoming a passenger, is not equivalent to the statement that he was a passenger. And again, it was said in *Birmingham Ry. & Electric Co.* v. *Mason,* 137 Ala. 342 (34 South. 207), that an allegation to the effect that "while plaintiff was engaged in or about becoming a passenger on said car" did not show that the plaintiff was a passenger. After

verdict, however, the case may be set down as a defective statement of a good cause of action.

4. In his argument to the jury, one of plaintiff's counsel charged that the surgeons employed by the defendant had neglected the plaintiff and that they had cut off her leg and her arm and did not do it properly. At this juncture, counsel for the defendant objected to the remarks of counsel, on the ground that there was no issue on that point, and that there was no charge against the company holding it responsible for the malpractice of its surgeons. The court sustained the objection and directed the jury not to consider the statement, whereupon the defendant saved an exception to the ruling of the court. No motion was made to set aside the verdict or to withdraw the case from the jury and award a new trial. The court made an appropriate ruling on the defendant's objection. If the defendant would seek a more drastic remedy than the mere withdrawal of the remarks from the jury with an instruction to disregard them, he should have moved the court for additional relief, such as dismissing the jury and ordering a retrial. The court correctly disposed of the objection, and if anything more was requisite or proper to be done, the court of original jurisdiction should have had an opportunity of doing it. In other words, as an appellate tribunal we cannot award any relief which was not asked for in the Circuit Court, and which was within its power to grant on timely application.

The next assignment presented for consideration is that involved in the instruction of the court directing the jury to "bring to your assistance your experience as men of affairs." In *Northern Supply Co.* v. *Wangard*, 123 Wis. 1 (110 N. W. 1066, 107 Am. St. Rep. 984, 993), the court had instructed the jury thus:

"You are to bring your own knowledge and experience in determining what the evidence and all the evidence and circumstances submitted for your consideration applicable to this question really establishes and means."

This instruction was condemned in the following language:

"Moreover, the instruction, so far as it permitted the jury to apply to the matter any special knowledge of their own, was erroneous. That is according to elementary principles."

In *Burrows* v. *Delta Transportation Co.,* 106 Mich. 582 (64 N. W. 501, 29 L. R. A. 468), the question involved concerned damages from a fire ascribed to sparks coming from the smokestack of a steamer which had in it a screen. The court charged the jury as follows:

"Now, if from your judgment and experience and knowledge, or better understanding of the testimony, you can say that there were large sparks that ought to have been arrested by the spark-catcher, you can find a verdict for the plaintiff; otherwise, you will find that there is no cause of action. The whole right to recover depends on this fire happening, being occasioned by sparks that would have been checked by this spark-arrester."

The appellate court held this was error, saying:

"This charge is a direction to the jury that they may determine the question of fact involved as to whether the employment of a screen upon the smokestack would have prevented the fire, by acting on their own judgment and experience and knowledge. They should have been directed that they were to determine the facts in the case, not from their judgment or experience or knowledge, but from the testimony given by the witnesses on the trial of the case."

5, 6. These precedents fairly illustrate the argument of the defendant against the correctness of the instruction. The great weight of authority, however, in our judgment, is to the contrary. Of course, jurors must act with legal discretion and in subordination to the rules of evidence: Section 868, subd. 1, Or. L. The personal knowledge of any juror concerning any probative fact involved in the case under consideration is not to be used in deciding the case. Such a juror should communicate his information to the court and if he is not excused from service and it is deemed proper to use his cognizance of such a fact in the trial, he must be sworn as a witness and examined, subject to cross-examination by the adverse party, the same as any other witness. But any juror must consider the testimony in the light of that knowledge and experience which is common to all men. For instance, it is matter of common knowledge that a bullet piercing the brain of a human being will in all likelihood prove fatal. It is common knowledge also that a forest tree cut nearly in two at the butt will fall, if a high wind blows against it. If a witness should testify to the contrary to these ordinary phenomena the common knowledge of the juror derived from his experience in such matters would naturally compel him to discredit that witness. Many illustrations might be given where men are normally and legitimately influenced in considering testimony by their general knowledge and experience. Probably as clear a statement of the true doctrine as can be found is that contained in the language of Mr. Justice HACKNEY in *Jenney Electric Co.* v. *Branham,* 145 Ind. 314 (41 N. E. 448, 33 L. R. A. 395). The court there had instructed the jury that "you may also, in

considering whom you will or will not believe, take
into account your experience and relations among
men." Treating of this instruction, the court said:

"By this it is claimed that the jurors were advised
that it was proper for them to employ any of their
particular experiences and relations among men out of
court, in determining the rights of the parties. It is
argued that such a rule would permit the disposition
of a cause upon the whims of jurors, rather than upon
the law and the evidence as they were learned in the
trial. Jurors should be, and, as a rule, are, selected
because of their extensive experiences among men.
The school of experience which men attend in their
varied relations among men imparts a keenness of
mental vision which enables them the more readily to
see the motives and to judge of the selfish or unselfish
interests of men. This education, be it much or little,
is a part of the juror, and should not, if possible, be
laid aside in passing upon the inducements which may
surround a witness to speak falsely. It is this educa-
tion which to a great extent enables a juror to dis-
cover in the faltering manner or the downcast eye
whether the statement of the witness is made in
modesty or in the guilt of falsehood. The value of
experience is not to be given up when the man be-
comes a juror, and is required to apply the tests of
credit to the heart and mind of the witness but what-
ever qualifications that experience gives should be
employed to the end that the whole truth may be
known and acted upon."

In a note to *Solberg* v. *Robbins Lumber Co.,* 147
Wis. 259 (133 N. W. 328, 37 L. R. A. (N. S.) 790,
793), the last-named publication has this language,
supported by a long list of authorities:

"Jurors are not restricted to a consideration of
facts directly proved, nor are they expected to lay
aside matters of common knowledge, or their own
observation and experience of the affairs of life, but,
on the contrary, may give effect to such inferences as

common knowledge or their personal observation and experience may reasonably draw from the facts directly proved.''

The distinction between the use of the juror's judgment and experience in the analysis of the testimony and his knowledge of some probative fact, is pointed out in *Ottawa Gas Light etc. Co.* v. *Graham,* 28 Ill. 73 (81 Am. Dec. 263). See also *Graysonia-Nashville Lumber Co.* v. *Carroll,* 102 Ark. 460 (144 S. W. 519); *Sanford* v. *Gates,* 38 Kan. 405 (16 Pac. 807); *Morrison* v. *State,* 42 Fla. 149 (28 South. 97); *Lafayette Bridge Co.* v. *Olsen,* 108 Fed. 335 (47 C. C. A. 367, 54 L. R. A. 33); *Marshall* v. *State,* 54 Fla. 66 (44 South. 742); *Cnkovch* v. *Success Min. Co.,* 30 Idaho, 623 (166 Pac. 567); *Falls City* v. *Sperry,* 68 Neb. 420 (94 N. W. 529, 4 Ann. Cas. 272); *People* v. *Turner,* 265 Ill. 594 (107 N. E. 162, Ann. Cas. 1916A, 1062); *Neanow* v. *Uttech,* 46 Wis. 581 (1 N. W. 221); *Springfield etc. R. R. Co.* v. *Hoeffner,* 175 Ill. 634 (51 N. E. 884); *Jacksonville etc. ·Ry. Co.* v. *Hoôper,* 160 U. S. 514 (40 L. Ed. 515, 16 Sup. Ct. Rep. 379, see, also, Rose's U. S. Notes); *Dunlop* v. *United States,* 165 U. S. 486 (41 L. Ed. 799, 17 Sup. Ct. Rep. 375); *Fisher* v. *O'Brien,* 99 Kan. 621 (162 Pac. 317, L. R. A. 1917F, 610).

The jurors in the present instance were carefully instructed as to the preponderance of the evidence, as to contradictory evidence, as to their being the exclusive judges of the credibility of the witnesses, as to the presumption that every witness speaks the truth, and the like. The controverted instruction was but an amplification of the statutory rule that the jurors are the exclusive judges of the credibility of the witnesses, but that they must act with legal dis-

cretion and in subordination to the rules of evidence. By the process indicated, in the charge, they were directed to analyze the evidence and to determine the truth of the matter in dispute. It is utterly impracticable in the administration of courts of justice to secure a juror whose mind is totally blank as to questions involved in the ordinary transactions of life. Triers of fact cannot, in the nature of things, be divested of general knowledge of practical affairs. The court cannot do otherwise than to direct them to use such experiences as are common to all men in the decision of questions of fact. It is part of the jury system which cannot be dispensed with. There was no error in this instruction.

7–9. The remaining error presented in argument is to the effect that the court was wrong in allowing the jury to award damages to the plaintiff for mental anguish which she might experience in the future. It is true, as taught in *Adams* v. *Brosius,* 69 Or. 513 (139 Pac. 729, 51 L. R. A. (N. S.) 36), that mere mental anguish, unaccompanied by physical injury, is not a ground for damages. But on the other hand, we learn in *Maynard* v. *Oregon R. R. Co.,* 46 Or. 15 (78 Pac. 983, 68 L. R. A. 477), that:

"It is undoubtedly true that one suffering from injuries to his person due to the negligence of another, may recover for mental distress and anguish resulting from the same cause."

The subject is exhaustively discussed in *Indianapolis Street Ry. Co.* v. *Ray,* 167 Ind. 236 (78 N. E. 978), and the conclusion reached that although damages are not recoverable for mental anguish flowing remotely from a physical impact caused by negligence, or from brooding over the plaintiff's physical condition, yet "an instruction in a personal injury

case that plaintiff should recover for medical expenses past and future, loss of earning past and future and bodily pain and mental suffering past and future, is correct.'' So intimately connected are the mind and body that no severe physical injury can occur without involving mental distress; and for that which directly flows from the physical injury as a natural consequence, whether present or fairly and reasonably to be apprehended, the injured party is entitled to recover such damages as will justly compensate him for the sequelae of the physical injury, whether the same be mental or physical. It will be noted that the challenged instruction in the instant case limits the physical pain and mental anguish to that which is ''a direct, natural and proximate result of the injury.'' Collateral distress is not included. The judgment is affirmed.                    Affirmed.

McBride, Brown and Harris, JJ., concur.