Submitted on record and briefs May 31, conviction for violation of *former* ORS 475.999(1) (2003) vacated and remanded for entry of conviction for violation of ORS 475.840 July 11, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARVIN ANDREW CLELLAND,
*Defendant-Appellant.*

Marion County Circuit Court
04C49324; A127670

162 P3d 1081

Patrick M. Ebbett and Chilton, Ebbett & Rohr, LLC, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Elizabeth A. Gordon, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Edmonds and Armstrong, Judges.

PER CURIAM

Edmonds, J., dissenting.

## PER CURIAM

Defendant, who was convicted of delivery of a controlled substance within 1,000 feet of a school, *former* ORS 475.999(1) (2003), *renumbered as* ORS 475.904(1) (2005), appeals, assigning error to the denial of his motion for judgment of acquittal (MJOA). The issue presented here is identical to that in *State v. Conklin*, 214 Or App 80, 162 P3d 364 (2007), and, because defendant was tried jointly with the defendants in *Conklin*, the evidentiary record is also identical. For the reasons stated in *Conklin*, the trial court erred in denying defendant's MJOA.

In response to the dissent, we rely on the analysis framed in *Conklin*, as supplemented by the following analogous hypothetical:

> A criminal statute prohibits teenagers from driving Chevrolets. All Chevrolets are red. "A," a teenager, is seen driving a red car. There is no record evidence as to what portion of all red cars are Chevrolets.

In that hypothetical, there is no basis from which the trier of fact could infer, as a matter of "logical probability," that the car "A" was driving was, in fact, a Chevrolet. *See State v. Bivins*, 191 Or App 460, 83 P3d 379 (2004). As we explained in *Bivins*:

> " 'The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. *The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.*' "

*Id.* at 467 (quoting with approval *Tose v. First Pennsylvania Bank, N.A.*, 648 F2d 879, 895 (3rd Cir), *cert den*, 454 US 893 (1981)) (emphasis added).

So too here. The "historical facts" that the Sonshine School, located at the Salem First Baptist Church, is a school attended primarily by minors and that all elementary schools

are attended primarily by minors do not, as a matter of "logical *probability*," support inferentially the "ultimate fact" that the Sonshine School is an "elementary school" (or a secondary or vocational school attended primarily by minors) as required under *former* ORS 475.999(1). To be sure, as the dissent emphasizes, that is a *possible* inference—just as it is *possible* that the red car "A" drove was a Chevrolet. But, for conviction of a crime, mere unquantifiable possibility is insufficient as a matter of law. More—"logical *probability*" of the requisite inference—is required. *See Bivins*, 191 Or App at 466-68.[1]

Conviction for violation of *former* ORS 475.999(1) (2003) vacated and remanded for entry of conviction for violation of ORS 475.840.

**EDMONDS, J.,** dissenting.

Defendant, along with several codefendants, was convicted of selling drugs in Marion Square Park, a city park within the City of Salem, in violation of *former* ORS 475.999(1) (2003), *renumbered as* ORS 475.904(1) (2005), which prohibits the sale of controlled substances within 1,000 feet of particular kinds of schools. On appeal, the majority holds that the evidence adduced by the state at trial was insufficient to prove that the school in the area of the deliveries, Sonshine School, is an elementary or secondary school within the meaning of the statute. Because the majority fails to give the state the benefit of all reasonable inferences that arise from the evidence offered by the state, I respectfully disagree with the majority's conclusion that the state has failed to prove a necessary element of the charge against defendant.

Two legal standards apply to the issue. The first standard is found in *former* ORS 475.999(1), which makes it unlawful for any person to deliver a controlled substance "within 1,000 feet of the real property comprising a public or

---

[1] We note, as we did in *Conklin*, that this is not a case in which the state's proof of an essential element was, by necessity, inferential and circumstantial. *See Conklin*, 214 Or App at 85 n 4. The state could easily have adduced direct proof—if such proof were available—regarding the requisite character of the Sonshine School. *Id.*

private elementary, secondary or career school attended primarily by minors." There is direct evidence in the record that Sonshine School is a school and that it is attended by minors. The remaining issue is whether the evidence in the record suffices to create a reasonable inference that Sonshine School is an elementary or secondary school. The Oregon Revised Statutes do not define what constitutes an elementary or secondary school. Therefore, those words must be given their ordinary or commonly understood meaning. An "elementary school" is "a school in which elementary subjects (as reading, writing, spelling, and arithmetic) are taught to children from about six to about twelve years of age which in the U.S. covers the first six or eight grades[.]" *Webster's Third New Int'l Dictionary* 735 (unabridged ed 2002). A "secondary school" is "a school more advanced in a grade than an elementary school and offering general, technical, vocational, or college-preparatory courses[.]" *Webster's* at 2051.

The second legal standard in play in this case is the standard of review that we apply to determine whether the trial court should have granted defendant's motion for a judgment of acquittal based on the purported insufficiency of the evidence. We review that question "in a criminal case following a conviction by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences * * *, could have found the essential element of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).[1] For purposes of analyzing that issue, there is no distinction between direct and circumstantial evidence. *State v. Lerch*, 296 Or 377, 396, 677 P2d 678 (1984). A "reasonable inference" is an inference made in light of a fact in evidence that is suggested by the laws of logic, as contrasted with an inference based on mere speculation. *State v. Bivins*, 191 Or App 460, 467, 83 P2d 379 (2004). However, that does not mean that, for an inference to

---

[1] As the Supreme Court pointed out in *Cunningham*, "This court's decision is not whether we believe that defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for the jury to so find." 320 Or at 63. That principle applies to this case where there is more than one inference that arises from the evidence about whether Sonshine School is an elementary or secondary school within the meaning of *former* ORS 475.999(1).

be permissible, it must *inevitably* follow from established facts; rather, the test is whether a rational juror could draw such an inference. *State v. Cervantes*, 319 Or 121, 127, 873 P2d 316 (1994).

With those standards in mind, I turn to the evidence offered by the state to prove that defendant was within 1,000 feet of an elementary or secondary school as required by *former* ORS 475.999(1), and to the additional reasonable inferences, if any, that arise from the facts in evidence. The evidence in that regard can be divided into three categories: (1) opinion evidence by two witnesses based on their personal perceptions; (2) exhibit 2, an aerial photograph with measurements prepared by one of the witnesses, that indicates the location of Sonshine School and its proximity to Marion Square Park; and (3) testimony regarding notices posted in the park where defendant was arrested—notices that the park was within 1,000 feet of a school. It is the combination of the evidence in those three categories that gives rise to the reasonable inference that Sonshine School is an elementary or secondary school within the meaning of the statute.

Cara Steele, an employee of the City of Salem Police Department and a crime analyst, testified that she created exhibit 2, an exhibit that was received into evidence. She explained that exhibit 2 is "an aerial shot of Marion Square Park that displays measurements." Steele was asked by counsel, "And if you were to create a 1,000 foot school buffer zone around that park, is there any school that is within that 1,000 foot zone?" Defense counsel objected on the basis that Steele lacked "appropriate knowledge as to whether or not there's a school within the 1,000 foot boundary," but the trial court overruled the objection.[2] Steele then testified, "Yes, there is a school." When asked what school is within the boundary, Steele replied, "Sonshine School."

The state then offered exhibit 2. Defense counsel sought leave to ask a question of Steele in aid of an objection.

"[DEFENSE COUNSEL]:   Have you been to the Sonshine School?

---

[2] Defendant does not assign as error the trial court's ruling on that objection.

"[STEELE]:    I've driven by it.

"[DEFENSE COUNSEL]:    Have you been in it?

"[STEELE]:    No.

"[DEFENSE COUNSEL]:    How do you know it's a school there?

"[STEELE]:    I have a map that is created by my Geographic Information Systems Department. It has the 1,000 foot school buffer drawn, and I utilized that. It's been identified as a school.

"[DEFENSE COUNSEL]:    Can you describe the building? That looked like the Salem Baptist Church.

"[STEELE]:    Yes."

Counsel then objected on that basis that

"she doesn't have any personal knowledge that there's a school there. And somebody told her there's a school there, but it doesn't look like a school. It doesn't smell like a school."

After a colloquy with counsel, the court admitted exhibit 2 as an aerial photograph of the scene but not as evidence that the park was within 1,000 feet of the school.[3]

The prosecutor then questioned Steele about the markings on exhibit 2. Steele responded that the markings indicated the "measurement from Sonshine School, boundaries." Steele then testified how she made the measurement with the use of a computer program and testified that the measurement was, in her opinion, accurate. The prosecutor then offered exhibit 2 and the markings on it "for the truth of the matter asserted." After the court indicated that it did not "understand the computer program itself," the prosecutor inquired further of Steele:

"[PROSECUTOR]:    What is this program used for aside from 1,000 foot school buffer zones? Do you know?

"[STEELE]:    It creates maps or I input the data to create maps.

---

[3] Subsequently, the measurements on exhibit 2 were also admitted into evidence.

"[PROSECUTOR]: What other kind of maps are created, if you know, from this program that the City of Salem uses?

"[STEELE]: They do school buffer zones. They create neighborhood associations. I create crime stats. It's used for water zones, tax lots. It's used predominantly for geographic reasons.

"[PROSECUTOR]: So the City of Salem uses this very same program to delineate property lines even?

"[STEELE]: Yes."

The state also called Detective Bethers, a member of the City of Salem Police Department, as a witness. Bethers testified that he was personally involved in monitoring the deliveries of controlled substances by the various defendants and that he was familiar with the location of the park and of Sonshine School.

"[PROSECUTOR]: Detective Bethers, of the dates that you were down at the Marion Square Park, do you recall seeing any signs or other placards inside the park that announced to the public that it's within 1,000 feet of a school?

"[BETHERS]: Yes.

"[PROSECUTOR]: Can you describe where the sign is situated and what it says or generally what it says?

"[BETHERS]: There are signs in the southwest and southeast corner that are posted that this park is within 1,000 feet of a school.

"[PROSECUTOR]: And do you yourself know where the Sonshine School is?

"[BETHERS]: Yes.

"[PROSECUTOR]: And can you describe just by visually—if you were to stand at the play structure, let's say, at the skate park, the child's play structure, would you be able to see the Sonshine School?

"[BETHERS]: You can see the parking lot of the Sonshine School.

"[PROSECUTOR]: Would you be able to throw a rock to it?

"[BETHERS]:   Yes.

"[PROSECUTOR]:   Are you confident, just from your own experience, that it's within 1,000 feet of Marion Square Park?

"[BETHERS]:   Yes."

On cross-examination, Bethers was asked the following questions and gave the following answers:

"[DEFENSE COUNSEL]:   I'd like to next talk to you about this Sonshine School. Can you tell the Court how it's spelled?

"[BETHERS]:   S-O-N-S-H-I-N-E.

"[DEFENSE COUNSEL]:   Have you ever been in that school?

"[BETHERS]:   No.

"[DEFENSE COUNSEL]:   Then how do you know it is a school within the definition of the statute that makes it illegal to sell controlled substances within 1,000 feet of a school?

"[BETHERS]:   I know it's a school primarily attended by minors.

"[DEFENSE COUNSEL]:   There's another facility that occupies the same real property. Do you know what that is?

"[BETHERS]:   I believe it's a church.

"[DEFENSE COUNSEL]:   So you don't know anything about the physical layout of the school?

"[BETHERS]:   No."

Bethers was then asked a series of questions about whether "Sonshine School was in session" on the particular dates that the deliveries occurred. He answered that he did not know.

After the state rested, the various defendants moved for judgments of acquittal. Counsel for defendant joined in all the motions for judgments of acquittal made by the codefendants. Counsel for a codefendant told the court with regard to his motions for judgments of acquittal:

"The grounds would be that the State's failed to introduce evidence that the Court could find beyond a reasonable doubt that the Sonshine School is a public or private elementary, secondary or career school attended primarily by minors. I think the only evidence we have of that is Detective Bethers' testimony that it was a school, maybe that there were signs in the park that said it was a school."

Whether the trial court erred when it denied defendant's motion for a judgment of acquittal turns on whether it can be reasonably inferred from the evidence in the record that Sonshine School is an elementary or secondary school within the meaning of *former* ORS 475.999(1). In *Bivins*, we agreed with the following description of the difference between permissible inferences and impermissible speculation:

" 'The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion draws from the proven facts.' "

191 Or App at 467 (quoting *Tose v. First Pennsylvania Bank, N.A.*, 648 F2d 879, 895 (3d Cir), *cert den*, 454 US 893 (1981)).

Moreover, a jury is entitled to draw inferences based on facts in evidence that are matters of common knowledge. *Dodge v. Tradewell Stores*, 256 Or 514, 516, 474 P2d 745 (1970). A trier of fact may not use his or her personal knowledge of facts as a substitute for evidence not put on by the state. *State v. Coffee*, 117 Or App 9, 12 n 1, 843 P2d 505 (1992). However, a fact in issue may be proved by direct or circumstantial evidence, and triers of fact are entitled to draw inferences from facts directly proved based on their common knowledge, experience, or personal observation. *Rostad v. Portland Ry. ETC. Co.*, 101 Or 569, 578-80, 201 P 184 (1921). Here, the facts that Sonshine School is a school and that minors primarily attend Sonshine School were directly proved through the testimony of Steele and Bethers.

It is a matter of common knowledge and experience that minors attend elementary or secondary schools. In light of the state's direct evidence, it is a logical inference from those facts that Sonshine School is an elementary or secondary school. That inference is not the only inference that flows from the state's direct evidence, but it is certainly an inference that a reasonable juror could draw based on his or her common experience.

Also, the facts in this case are unlike the facts in *Bivins*, where we concluded that the "minimal circumstantial evidence presented by the state requires too much stacking of inferences and, ultimately, too great an inferential leap." 191 Or App at 470. In that case, the issue was whether an assault was witnessed by the defendant's or the victim's children. The state was required to prove as an element of the crime that a child personally saw or through some other first-hand sense was conscious of the assault. The state relied on direct evidence that the children were present in the house where the assault occurred and circumstantial evidence that the argument between the defendant and the victim could be easily heard in other areas of the house and easily seen if doors were open. However, the state was required to prove that the children perceived the assault as distinct from the general argument between the participants.

We agreed that the jurors could properly infer that the open-hand slap allegedly inflicted on the victim by the defendant would have made a distinctive sound based on their common experience. 191 Or App at 469. However, we reasoned that, because the alleged assault was a fleeting event in the midst of a more protracted conflict between the participants, including the throwing of a phone against the wall and mutual shoving and pushing, there were no predicate facts that assisted in informing the jury whether the sound of the slap arose above the noise of the argument or the other sounds of their physical conflict. Moreover, there were no predicate facts that permitted a logical inference that the children were paying attention to what was occurring in the other room of the house. Consequently, we concluded that it would be mere speculation that the children saw or were otherwise conscious of the assault.

In contrast, this case requires no stacking of inferences or intermediate inferences before the ultimate fact in issue can be reasonably inferred. Both Steele and Bethers testified from their personal knowledge that Sonshine School was a school. Bethers testified that it was attended primarily by minors. That direct testimony eliminates the possibility that Sonshine School was an adult educational facility. Defendant argues, however, that the location of the Sonshine School on church property is consistent with the school being a Sunday school or a daycare school, both kinds of schools primarily attended by minors. But, the fact that other competing inferences could be drawn from the state's evidence does not operate to render the inference that the Sonshine School is an elementary or secondary school speculative in nature. An inference is impermissibly speculative and justifies the withdrawal of the case from the jury only when the inference is not reasonable or is logically improbable. Otherwise, it is up to a jury or a court sitting as the trier of fact to consider competing inferences and determine whether the state has proved its case beyond a reasonable doubt.[4]

Finally, there is other evidence that buttresses the reasonableness of the inference that Sonshine School is an elementary or secondary school. Part of the evidence consists of opinions by Steele and Bethers that Sonshine School is a school based on their personal observations. OEC 701 permits a witness to render an opinion or draw an inference that is rationally based on the perception of the witness. A trier of fact could infer from common knowledge that schools generally announce their presence through external characteristics to an observer. Thus, a person driving by a school or within a stone's throw of a school would ordinarily be thought to have the ability to discern the existence and character of a school through personal observation. While that evidence may not by itself be sufficient to draw the inference that Sonshine School is, in fact, an elementary or secondary school, it puts the evidence that the school is attended by

---

[4] If the evidence supports multiple reasonable inferences, it is for the trier of fact to decide which inference to draw and whether that inference establishes the ultimate fact in issue beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 574, 966 P2d 208 (1998).

minors into a narrower context, despite defendant's suggestion that Sonshine School could well be a Sunday school or a daycare school.

Similarly, the fact that the City of Salem has designated Sonshine School on its official maps as a school and the fact that there were posted notices about the school in the adjoining Marion Square Park add further context to the state's evidence. A trier of fact could properly infer that the City of Salem's maps would not have designated Sonshine School as a school unless the city was aware of the school's characteristics. Indeed, labeling the location as a school belies the notion that it is a daycare facility or Sunday school because, presumably, it would not be part of the city's official business to give special designations to those kinds of uses on city maps. Moreover, it could be reasonably inferred that it was the city that posted the notices in Marion Square Park and that those notices refer to Sonshine School. Such facts give rise to a presumption under OEC 311(1)(j) that an "[o]fficial duty has been regularly performed" and provide support for reasoning that the ultimate fact that the state wishes to be inferred is not speculative in nature.

Thus, contrary to the majority's assertion, it is not only the testimony that minors attend Sonshine School that would have allowed the jury to reasonably infer that Sonshine School is an elementary or secondary school. Rather, that evidence—together with the opinion evidence that Sonshine School is a "school," evidence that the City of Salem has designated Sonshine School as a "school" on its official maps, and evidence that Marion Square Park has signs stating that the park is within 1,000 feet of a school—create a "logical probability," *Bivins*, 191 Or App at 467, that Sonshine School is an elementary or secondary school within the meaning of *former* ORS 475.999(1).

It can be argued that the state should have offered direct testimony regarding the character of the Sonshine School instead of relying on an inference. Perhaps that would be the preferred method of proof. But this court's task is not to evaluate the prosecutor's performance; rather, our task is to apply the applicable standard of review properly, which means that the state is entitled to all reasonable inferences

that arise from its evidence. For the reasons expressed above, it is evident that the inference that Sonshine School is an elementary or secondary school is an inference that could be properly drawn by a rational trier of fact.

I therefore dissent.